## COLORADO *v.* NUNEZ

No. 82–1845.   Argued January 17, 1984—Decided February 21, 1984

*Steven L. Bernard* argued the cause for petitioner.   With him on the brief was *James F. Smith.*

*Kenneth H. Stern* argued the cause and filed a brief for respondent.*

PER CURIAM.

The writ is dismissed as improvidently granted, it appearing that the judgment of the court below rested on independent and adequate state grounds.

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUSTICE O'CONNOR join, concurring.

The Court today concludes that the Colorado Supreme Court relied on independent and adequate state grounds when it affirmed the trial court's decision to suppress a quantity of heroin seized during a search of respondent Nunez' house following the State's refusal to disclose the identity of a confidential informant on which the Denver Police Department had relied to establish probable cause for the search.   I write not to challenge the Court's determination that the judgment under review rests on independent and adequate state grounds, but to make clear that neither the Federal Constitution nor any decision of this Court requires the result reached by the Colorado Supreme Court.

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey,* and *David A. Strauss;* and for the Colorado District Attorneys Council by *Brooke Wunnike.*

*Burt Neuborne* and *Charles Sims* filed a brief for the American Civil Liberties Union as *amicus curiae.*

Before the commencement of his trial on a charge of possession of a controlled substance, Nunez filed a motion to suppress most of the evidence against him on the ground, among others, that the facially valid warrant authorizing the search of his home was not supported by probable cause. In a companion motion, Nunez sought to facilitate his challenge to the legality of the search and his defense on the merits by obtaining disclosure of the names, addresses, and telephone numbers of all informants who had provided evidence against him. The trial court held a hearing at which Nunez gave testimony at odds with the affidavit supporting the search warrant and his attorney gave contradictory signals concerning whether the conduct of the affiant or the informant was at issue. See App. 31–32, 34, 36, 38–39. The court concluded that Nunez had made a sufficient "initial showing that the informant will provide information essential to the merits of his suppression ruling." *People* v. *Bueno*, 646 P. 2d 931, 935–936 (Colo. 1982). It also found that Nunez had shown a reasonable basis in fact to believe that the informant was a likely source of relevant and helpful evidence on the question of guilt or innocence. App. 92. When the State refused to comply with its order to disclose the informant's identity, the trial court suppressed the evidence seized pursuant to the search warrant. *Id.*, at 93.

The State took an interlocutory appeal to the Colorado Supreme Court, which affirmed the trial court's judgment solely on the ground that disclosure of the informant's identity was essential to Nunez' motion to suppress. 658 P. 2d 879 (1983). The State argued strenuously that "an accused must question the conduct of the police in constructing the warrant before he may request the court to order the prosecution to reveal the informant's identity." App. 107. In its view, "a court, after a proper allegation by the accused that brings the *affiant's* credibility into issue, may order disclosure of the informant's identity," but "[t]here must be an attack upon the *affiant's* credibility before the informant can be disclosed." *Id.*, at 103 (emphasis in original).

Although the State cited two federal cases recognizing an informant's privilege, its distinction between situations where the affiant's credibility is attacked and those where only the informant's credibility is questioned rested largely on state law. The Colorado Supreme Court responded in kind, concluding that the State's contention misapprehended its holding in *People* v. *Dailey*, 639 P. 2d 1068 (1982):

> "*Dailey* recognized that errors in an affidavit for a search warrant can result 'from the informant's perjury or reckless disregard for the truth, or from the negligence or good faith mistake of either the officer or the informant.' 639 P. 2d at 1075. When, following a veracity hearing, the probability of one of those kinds of error has been found, the election of remedies or sanctions is left to the discretion of the district court. The necessary foundation for the court's exercise of discretion in ordering disclosure is a showing of a reasonable basis in fact to question the accuracy of *the informant's recitals.*" 658 P. 2d, at 881 (emphasis added).

This holding, I believe, confers on trial courts in Colorado discretion to do far more than the Federal Constitution minimally requires.

"[I]n the exercise of its power to formulate evidentiary rules for federal criminal cases," this Court "has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search." *McCray* v. *Illinois*, 386 U. S. 300, 312 (1967). See *Roviaro* v. *United States*, 353 U. S. 53 (1957). Nothing in the Federal Constitution, we held in *McCray*, requires a State "to abolish the informer's privilege from its law of evidence, and to . . . disclos[e] . . . the informer's identity in every such preliminary hearing where it appears that the officers made the arrest or search in reliance upon facts supplied by an informer they had reason to trust." 386 U. S., at 312.

We have, to be sure, recently concluded that the Fourth and Fourteenth Amendments entitle a defendant to a verac-

ity hearing if he makes a substantial preliminary showing that an affiant knowingly and intentionally, or with reckless disregard for the truth, included in a warrant affidavit a false statement necessary to the finding of probable cause. *Franks* v. *Delaware*, 438 U. S. 154 (1978). But in so doing we emphasized that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Id.*, at 171. The decision in *Franks* neither required nor contemplated routine disclosure of informants' identities, and we took care to avoid deciding or predetermining "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made." *Id.*, at 170.

In *People* v. *Dailey*, *supra*, the state-court decision on which the challenged judgment rests, the Colorado Supreme Court clearly recognized the limits of the rights conferred by the Fourth and Fourteenth Amendments. *Id.*, at 1074. It concluded, however, that *Franks* established only the federal constitutional standard and held that the State Constitution entitles defendants to challenge the informant's veracity and in appropriate circumstances to have his identity disclosed for that purpose. Although this case would be resolved differently under federal law, see *McCray* v. *Illinois, supra,* at 306–309, I agree that the challenged judgment rests solely on state-law grounds and that this Court lacks jurisdiction to review it.

JUSTICE STEVENS, concurring.

In view of the growing public interest in the magnitude of our workload,[1] I have on occasion taken note of some of the ways in which the present Court makes use of its resources. Several years ago, I expressed concern about the purely ad-

---

[1] See, *e. g.*, Coleman, The Supreme Court of the United States: Managing its Caseload to Achieve its Constitutional Purposes, 52 Fordham L. Rev. 1 (1983); Note, Of High Designs: A Compendium of Proposals to Reduce the Workload of the Supreme Court, 97 Harv. L. Rev. 307 (1983).

visory character of individual opinions dissenting from orders denying petitions for certiorari. See *Singleton* v. *Commissioner*, 439 U. S. 940, 944–945 (1978) (opinion of STEVENS, J.). More recently I have noted that the Court is prone to grant certiorari in cases that do not merit our attention. See *Watt* v. *Alaska*, 451 U. S. 259, 273–276 (1981) (STEVENS, J., concurring); see also *Watt* v. *Western Nuclear, Inc.*, 462 U. S. 36, 72–73 (1983) (STEVENS, J., dissenting).[2] Last Term, in *South Dakota* v. *Neville*, 459 U. S. 553 (1983), and *Michigan* v. *Long*, 463 U. S. 1032 (1983), the Court decided to enlarge its power to review state-court decisions. I dissented from those novel assertions of appellate jurisdiction in part because I was concerned about the undesirability of the rendition of purely advisory opinions by this Court. See *id.*, at 1065 (STEVENS, J., dissenting); 459 U. S., at 566 (STEVENS, J., dissenting); see also 463 U. S., at 1054 (BLACKMUN, J., concurring in part and in judgment in *Michigan* v. *Long*) (noting "an increased danger of advisory opinions in the Court's new approach").

Today JUSTICE WHITE "agree[s] that the challenged judgment rests solely on state-law grounds and that this Court lacks jurisdiction to review it." *Ante*, at 327. He nevertheless provides us with an advisory opinion, in which THE CHIEF JUSTICE and JUSTICE O'CONNOR join, concerning the merits of the case. We of course have jurisdiction to determine our jurisdiction over this case, but once we agree that we lack jurisdiction, this case no more provides a vehicle for deciding the question upon which three Justices now volunteer an opinion than if the petition for a writ of certiorari had never been filed. I, of course, fully respect their right to their opinions concerning that question, just as I respect other scholars who disagree with the wisdom of the choice made in *Hayburn's Case*, 2 Dall. 409 (1792). I merely note that today's advisory opinion is consistent with the Court's

---

[2] See generally Stevens, Some Thoughts on Judicial Restraint, 66 Judicature 177, 180 (1982).

emerging tendency to enlarge its own involvement in litigation conducted by state courts. This tendency feeds on itself, for it can only encourage litigants—particularly institutional litigants—to file even more petitions for certiorari in the hope of obtaining, if not review and reversal, at least an opinion by a number of Supreme Court Justices in support of their position. In light of the increasing flood of certiorari petitions, today's advisory opinion provides further support for concluding that this situation "will very likely progressively worsen."[3]

---

[3] White, Challenges for the U. S. Supreme Court and the Bar: Contemporary Reflections, 51 Antitrust L. J. 275, 280 (1982).