The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Ronald MONTGOMERY,
Defendant-Appellee.

No. 85SA250.

Supreme Court of Colorado,
En Banc.

May 26, 1987.

Robert R. Gallagher, Jr., Dist. Atty., John C. Jordan, Chief Deputy Dist. Atty., Littleton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellee.

QUINN, Chief Justice.

In this appeal the People challenge the legality of several sentences imposed on the defendant, Ronald Steven Montgomery, in a resentencing proceeding.[1] The defendant had originally been charged with and convicted of three substantive felonies, and was sentenced to life imprisonment as a habitual criminal with three prior felony convictions. However, one of the prior felony convictions used as a predicate for the habitual criminal sentence was later determined to be constitutionally infirm. In resentencing the defendant, the district court imposed sentences below the statutory term applicable to a habitual criminal offender with two prior felony convictions, and instead sentenced the defendant to terms of imprisonment applicable to the substantive offenses in order to preserve the parole eligibility date available to the defendant under the previously imposed life sentences. We hold that the sentences imposed in the resentencing proceeding impermissibly circumvent the mandatory sentencing scheme applicable to habitual criminals, and we accordingly reverse the sentences and remand the case for resentencing.

I.

In September 1976 an Arapahoe County jury returned guilty verdicts against the defendant on charges of second degree murder, aggravated robbery, and possession of a dangerous drug with intent to dispense.[2] In the same proceeding, the defendant was adjudicated a habitual criminal

---

1. The People prosecute this appeal pursuant to section 16–12–102(1), 8A C.R.S. (1986), which authorizes the People to appeal any decision of the trial court in a criminal case upon a question of law. C.A.R. 4(b)(2) provides that such an appeal shall be filed in the supreme court.

2. The offenses were committed on December 18, 1975, in Elbert County, Colorado. The case was originally filed in the District Court of Elbert County, but venue was later changed to Arapahoe County.

based on the following three prior felony convictions charged against him in separate counts of the information: a 1969 California conviction for grand auto theft; a 1970 California conviction for assault on a peace officer; and a 1971 California conviction for receiving stolen property and car theft. On November 5, 1976, the District Court of Arapahoe County, based on the adjudication of the defendant as a habitual criminal with three prior felony convictions, imposed life sentences on the convictions for the substantive charges, and ordered the sentence for the drug offense to be served consecutively to the concurrent sentences for second degree murder and aggravated robbery and further ordered all of the sentences to be served consecutively to another life sentence which the defendant was then serving.[3] Pursuant to the statutory scheme then in effect, an application for parole from an inmate serving a life sentence could not be considered until the inmate had served at least ten calendar years on the sentence. *See* § 17–22.5–104(2)(a), 8A C.R.S. (1986).

On October 18, 1984, the Superior Court of San Diego County, California, vacated the defendant's 1971 California conviction for receiving stolen property and car theft as constitutionally invalid. Thereafter, on January 10, 1985, the defendant filed a Crim.P. 35 motion requesting the District Court of Arapahoe County to vacate the life sentences previously imposed for habit-

ual criminality and to impose new sentences. The district court granted the defendant's motion to vacate the previously imposed life sentences. Both the district attorney and the defendant agreed that any sentence imposed under the Habitual Criminal Act should be in accordance with the amended version of section 16–13–101(1), 8 C.R.S. (1976 Supp.), which was in effect on the date of the original sentence of November 5, 1976, although not in effect on the date of the commission of the substantive crimes.[4] The 1976 version of section 16–13–101(1), provided as follows:

Every person convicted in this state of any felony for which the maximum penalty prescribed by law exceeds five years who, within ten years of the date of the commission of the said offense, has been twice previously convicted upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony shall be adjudged an habitual criminal and shall be punished by confinement in the state penitentiary for a term of not less than twenty-five years nor more than fifty years.

The defendant, however, urged the district court not to impose sentences under the habitual criminal act but instead to sen-

---

**3.** Following the defendant's 1976 conviction and life sentences, he unsuccessfully challenged his conviction and sentences in the court of appeals. He later challenged his 1976 life sentences by a Crim.P. 35 motion. The district court denied the motion, but the court of appeals concluded that consecutive life sentences constituted an unconstitutional interference by the judiciary with the functions of the parole board. *People v. Montgomery,* 645 P.2d 283 (Colo.App.1981). This court reversed the court of appeals in *People v. Montgomery,* 669 P.2d 1387 (Colo.1983).

**4.** In *People v. Thomas,* 185 Colo. 395, 525 P.2d 1136 (1974), this court held that a defendant is entitled to the benefit of amendatory sentencing legislation as long as he files a motion seeking such relief before his conviction becomes final. The district attorney and the defendant conceded that the *Thomas* decision required that

any sentence under the Habitual Criminal Act be in accordance with the 25–50 year term mandated by the 1976 version of section 16–13–101(1), ch. 93, sec. 6, § 16–13–101, 1976 Colo. Sess.Laws 545, 548, rather than the precursor to section 16–13–101(1), which required a term of not less than the longest term applicable to the substantive crime and not more than three times the longest term applicable to such crime. § 16–13–101, 8 C.R.S. (1973). Under this former version of the Habitual Criminal Statute, therefore, the defendant faced a penalty of not less than 50 nor more than 150 years for second degree murder, § 18–1–105, § 18–3–103, 8 C.R.S. (1973), a penalty of not less than 40 nor more than 120 years for aggravated robbery, § 18–1–105, § 18–4–302, 8 C.R.S. (1973), and a penalty of not less than 14 nor more than 42 years for possession of a dangerous drug with intent to dispense, § 12–22–404, § 12–22–412, 5 C.R.S. (1973).

tence him under the penalty scheme applicable to the substantive offenses, namely: a term of not less than ten nor more than fifty years for second degree murder, § 18–1–105(1), § 18–3–103, 8 C.R.S. (1973); a term of not less than five nor more than forty years for aggravated robbery, § 18–1–105(1), § 18–4–302, 8 C.R.S. (1973); and a term of not less than one nor more than fourteen years for possession of a dangerous drug with intent to dispense, §§ 12–22–404, –412, 5 C.R.S. (1973). It was the defendant's contention that a sentence of twenty-five to fifty years under section 16–13–101(1) of the Habitual Criminal Act would result in delaying the defendant's ten calendar year parole eligibility date applicable to a previously imposed life sentence and thus would result in a harsher sentence in violation of due process of law. U.S. Const. amend. XIV. The district court agreed with the defendant's due process claim and imposed the following sentences: a term of twenty to fifty years for second degree murder; a term of twenty to forty years for aggravated robbery; and a term of thirteen to fourteen years for possession of a dangerous drug with intent to dispense. The court further ordered that the thirteen to fourteen year drug sentence was to be served consecutively to the two concurrent sentences for second degree murder and aggravated robbery, that the three sentences were to be served consecutively to an earlier life sentence imposed for another crime in another judicial district, and that the defendant was to be credited on each sentence with all time served under the original sentences imposed on November 5, 1976.

The People in this appeal contend that the district court erred in sentencing the defendant below the range of twenty-five to fifty years mandated by section 16–13–101(1) for an offender adjudicated a habitual criminal on the basis of two prior felony convictions. We agree with the People's claim.

## II.

Although the plain language of section 16–13–101(1) circumscribes the sentencing court's discretion to a penalty of twenty-five to fifty years for an offender adjudicated a habitual criminal on the basis of two prior felony convictions, the district court refused to impose such sentences because, in its view, a minimum twenty-five year term would delay the defendant's parole eligibility date applicable to each previously imposed life sentence and would thus constitute a harsher penalty in violation of due process of law. The district court erred in so ruling.

### A.

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969), the United States Supreme Court considered the extent to which the Due Process Clause limits the imposition of a harsher sentence when the defendant's original conviction has been set aside and he stands before the court for resentencing after conviction upon retrial. The Supreme Court held that there was no absolute constitutional bar to the imposition of a more severe sentence as long as the record affirmatively shows that the harsher sentence was not the result of judicial vindictiveness:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge.

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon

which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

395 U.S. at 725–26, 89 S.Ct. at 2081. (footnote omitted).

There are two conditions underlying *Pearce's* due process limitation on resentencing: (1) the subsequent sentence must be more severe than the prior sentence; and (2) there must be a realistic likelihood that the harsher sentence was motivated by vindictiveness against the offender for successfully appealing or collaterally attacking the prior conviction. *See, e.g., Blackledge v. Perry,* 417 U.S. 21, 27–29, 94 S.Ct. 2098, 2102–03, 40 L.Ed.2d 628 (1974); *Chaffin v. Stynchcombe,* 412 U.S. 17, 24–28, 93 S.Ct. 1977, 1981–83, 36 L.Ed.2d 714 (1973); *Colten v. Kentucky,* 407 U.S. 104, 116–17, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584 (1972). Neither of these constitutional predicates is present here.

### B.

A sentence to a term of twenty-five to fifty years under section 16–13–101(1), 8 C.R.S. (1976 Supp.), is not a more severe sentence than life imprisonment. The granting of parole is a matter of grace, not a matter of right. *E.g., People v. Montgomery,* 669 P.2d 1387 (Colo.1983); *Silva v. People,* 158 Colo. 326, 407 P.2d 38 (1965). An inmate's parole eligibility date, although not without some significance, is neither the exclusive nor controlling consideration in determining the relative severity of alternative sentences. Of critical significance, in our view, is the relationship between the term of years imposed in an original sentence and the term of years imposed in the second sentence.

In arguing that his earliest parole eligibility date under a twenty-five to fifty year sentence would be increased over a previously imposed life sentence, the defendant relies primarily on the statutory good time credit allowance in section 17–22.5–201(1), 8A C.R.S. (1986), which authorizes good time credits of two months for each of the first two years of the sentence, four months for each of the next two years, and five months for each of the remaining years of the sentence. The defendant, however, overlooks the additional good time credits set forth in other subsections of section 17–22.5–201. Subsection (2), for example, authorizes an additional good time allowance of ten days per month to be credited upon the time remaining to be served, upon approval of the executive director of the department of corrections. Subsection (3) further authorizes an additional good time allowance of five days per month for each calendar year remaining to be served when the executive director determines that the inmate has performed meritorious service or has performed assigned tasks in correctional industries in an outstanding manner. The cumulative effect of all these statutory good time allowances is to substantially reduce the defendant's parole eligibility date on a twenty-five year minimum sentence to within a few months of the ten calendar year earliest parole eligibility date under a life sentence.

Moreover, although under each of the original life sentences the defendant would have been eligible to apply for parole after ten calendar years, in no event would he have been entitled to parole as a matter of right. § 17–22.5–104(2)(a), 8A C.R.S. (1986). A life sentence, therefore, could have resulted in the imprisonment of the defendant for the remainder of his life. In contrast, a sentence within the range of twenty-five to fifty years under section 16–13–101(1), 8A C.R.S. (1976 Supp.), would have assured the defendant that he would have been eligible for parole application after the expiration of the short end of the sentence, reduced by statutory good time and other credits, and that he would be unconditionally released upon expiration of the long end of the sentence, as similarly reduced by statutory credits.

When all the features of these two sentences are examined, we are satisfied that a sentence to a term of twenty-five to fifty years is not harsher than a sentence to life imprisonment. *See State v. Smith,* 206 Kan. 744, 481 P.2d 995 (1971) (no due process violation where defendant's original

sentence to life imprisonment as habitual criminal was vacated and defendant was resentenced to consecutive sentences of lesser terms but with the effect of postponing the parole eligibility date available to defendant under original sentence).

### C.

We are also satisfied that the mandatory nature of the sentence prescribed by the Habitual Criminal Act constitutes a complete refutation of any realistic likelihood of vindictiveness when a habitual criminal offender is resentenced 'in accordance with the statutory penalty. Section 16–13–101(1) requires the imposition of a sentence of not less than twenty-five nor more than fifty years when a defendant, as in this case, has been adjudicated a habitual criminal on the basis of two prior felony convictions. Given this statutory limitation on a court's sentencing authority, there is simply no basis in law to posit a claim of unconstitutional vindictiveness or other improper retaliatory motive on the part of a sentencing judge for doing precisely what the law requires the judge to do. *See State v. Eaton*, 213 Kan. 86, 515 P.2d 807 (1973) (no showing of vindictiveness where judge imposed exact penalty prescribed by Kansas habitual criminal statute, although long end of term was greater than original sentence for habitual criminality, which original sentence was subsequently vacated as based on constitutionally infirm conviction); *see also United States v. Riffe*, 600 F.2d 1146 (5th Cir.1979) (imposition of corrected sentence on remand not violative of due process where judge was required to sentence offender as adult even though original sentence was imposed under Youth Corrections Act); *Jones v. United States*, 538 F.2d 1346 (8th Cir.1976) (no violation of due process where original sentence to term of imprisonment was amended by adding mandatory parole term to the original sentence.)

### III.

Since the defendant in the resentencing proceeding stood before the court as an adjudicated habitual criminal with two pri-

or felony convictions, it was incumbent upon the district court to resentence the defendant to a term of not less than twenty-five nor more than fifty years, as required by section 16–13–101(1). The sentencing court had no authority to ignore the penalty provisions of the Habitual Criminal Act and to impose sentences below the statutory minimum of twenty-five years.

The sentences are accordingly reversed and the cause is remanded to the district court for resentencing in a manner not inconsistent with the views herein expressed.