[No. C001411. Third Dist. Aug. 27, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
KATHRYN ANN CALLEN, Defendant and Appellant.

**COUNSEL**

Diane M. Mahoney, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and W. Scott Thorpe, Deputy Attorney General, for Plaintiff and Respondent.

Kent S. Scheidegger as Amicus Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—The "Crimestoppers" program of the City of Stockton offers members of the public the opportunity anonymously to provide information to the police about criminals and criminal activity. Defendant was

arrested and charged with robbery after an investigation precipitated by an anonymous tip received by police on the Crimestoppers telephone hotline from an apparent percipient witness to the crime. The issue on appeal is whether police have a duty to determine and disclose to defendant the identity of such an informant.

Callers on the Crimestoppers telephone hotline are assigned a code number which guarantees anonymity and is the only means of identification unless the caller elects to identify himself. The majority of callers do not identify themselves. The calls are neither taped nor traced but are monitored contemporaneously by police officers. The program offers a reward to those who provide information but most callers decline to accept the offered reward. The amount and method of paying rewards rests with a board of directors composed of interested citizens.

As 84-year-old Lilija Zberbulis was walking on the sidewalk of Rosemarie Lane in Stockton, a car pulled up beside her. Defendant stepped out of the car, asked Zberbulis a question, and then grabbed her purse. Despite Zberbulis's resistance, defendant wrested away her purse and reentered the vehicle which sped away.

Two days later, Sergeant Grude received a telephone call on the Crimestoppers hotline. The caller informed Grude that a female suspect had grabbed an elderly lady's purse on Rosemarie Lane. The caller gave Grude the license plate number of the getaway vehicle. Grude asked if the caller wished to identify herself but she refused and declined an offer of reward.

Grude relayed the information to other officers, who traced the license number to a car registered to David Mareno. Police contacted Mareno who stated that defendant and another woman may have been using the car on the date in question. The officers received permission to search Mareno's residence and found defendant hiding in a closet. The officers later compiled a photo lineup which they showed to the victim. She identified defendant as the person who stole her purse. At the preliminary hearing, the victim again identified defendant as the purse snatcher.

Prior to the preliminary hearing, defendant moved for an order compelling disclosure of the identity of the informant who contacted the police on the Crimestoppers hotline. The police did not know the informant's identity. The magistrate denied the motion. Defendant was held to answer.

An information was filed in superior court charging defendant with robbery. Defendant moved to dismiss the information pursuant to Penal Code section 995, claiming denial of a substantial right at preliminary hearing by

virtue of police conduct which allowed a percipient witness to remain unidentified. Her motion was denied. Thereafter defendant submitted the general issue on the preliminary hearing transcript, with the understanding that if found guilty she would receive no more than a term in county jail. The trial court found defendant guilty of the lesser included offense of grand theft person (Pen. Code, § 487, subd. 2) and sentenced her to one year in county jail. Defendant appeals.

■ Defendant contends the police have a duty to preserve evidence relating to the identity of witnesses who inform on the Crimestoppers hotline. She argues the police may not operate a program which is purposely designed to conceal the identity of eyewitness informants, and that the inability of the police to identify the informant deprived her of a substantial right because she was unable at the preliminary hearing to elicit relevant evidence from a percipient witness.

■ The identity of an informant who is a percipient witness must be disclosed (see *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 417-421 [112 Cal.Rptr. 485]). That assumes of course that the police themselves know the informant's identity. We are unaware of any decision holding the police have an affirmative obligation to determine the identity of an anonymous informant who provides information. Defendant's reliance on *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361] and *People* v. *Nation* (1980) 26 Cal.3d 169 [161 Cal.Rptr. 199, 604 P.2d 1051], is misplaced. Both of those decisions impose a duty of preservation of evidence favorable to the accused *if the People have gathered such evidence.* ■ " '[T]he law does not impose upon law enforcement agencies the requirement that they take the initiative, or even any affirmative action, in procuring . . . evidence deemed necessary to the defense of an accused.' [Citation.]" (*People* v. *Newsome* (1982) 136 Cal.App.3d 992, 1006 [186 Cal.Rptr. 676]; see, e.g., *In re Michael L.* (1985) 39 Cal.3d 81, 86-87 [216 Cal.Rptr. 140, 702 P.2d 222] (no duty to seize victim's videotape of robbery); *People* v. *Hogan* (1982) 31 Cal.3d 815, 851 [183 Cal.Rptr. 817, 647 P.2d 93]; *People* v. *McNeill* (1980) 112 Cal.App.3d 330, 338 [169 Cal.Rptr. 313] (no duty to seize fingernail scrapings of victim); *People* v. *Ventura* (1985) 174 Cal.App.3d 784, 794-795 [220 Cal.Rptr. 269] (no duty to take and preserve intoxication test at time of arrest); *People* v. *Kane* (1985) 165 Cal.App.3d 480, 485 [211 Cal.Rptr. 628] (no duty to impound victim's automobile); *People* v. *Bradley* (1984) 159 Cal.App.3d 399, 404-408 [205 Cal.Rptr. 485] (no duty to seize blood-stained articles at crime scene); *People* v. *Maese* (1980) 105 Cal.App.3d 710, 719-720 [164 Cal.Rptr. 485] (no duty to take fingerprints); *People* v. *Flores* (1976) 62 Cal.App.3d Supp. 19, 23 [133 Cal.Rptr. 759] (no duty to obtain names of witnesses).) "The police cannot be expected to 'gather up everything which might even-

tually prove useful to the defense.' [Citations.]" (*People* v. *Hogan, supra,* 31 Cal.3d 815, 851; see *People* v. *McNeill, supra,* 112 Cal.App.3d at p. 338.)

■■■ Defendant attempts to distinguish this case from the above cited cases, in that here "the police had already obtained evidence from the informant that was clearly useful to the defense and effectively destroyed it by the method of operation of the 'Crimestoppers' program." Defendant appears to argue that programs such as Crimestoppers, which guarantee anonymity by not tracing incoming calls, suppress evidence which might be helpful to the defense. Defendant suggests the police have an affirmative obligation to record and trace all Crimestoppers hotline calls to discover for the defendant's benefit the identity of the callers.

We reject defendant's argument for several reasons. First, we do not agree that simply by answering the telephone the police are deemed to have seized potentially material evidence which they must then preserve for the benefit of the defense. (Cf. *People* v. *Bradley, supra,* 159 Cal.App.3d at pp. 406-407.)

Second, it is sheer speculation that taping or tracing hotline calls will yield anything of benefit to criminal defendants. Informants who are determined to protect their anonymity may disguise their voices, call from public telephones, limit their calls to a duration too brief to trace, or even communicate with law enforcement by means not involving the telephone, for instance, by letter.

Moreover, the burden defendant would place on law enforcement would necessarily extend beyond simply taping or mechanically attempting to trace telephone calls. The police would have to endeavor to keep the informant on the line as long as possible in order to trace the call. Even if the call is successfully traced to a particular phone instrument, the caller still might physically elude the police, necessitating further investigation such as dusting the phone and surrounding area for fingerprints and locating witnesses in the area who might have observed anyone using the phone. Additional investigatory burdens can easily be imagined. In each case, the courts would be required ". . . to examine the investigation made by the [police] . . . to determine if the [police] properly conducted the investigation for the benefit of the defense." (*People* v. *Maese, supra,* 105 Cal.App.3d at p. 720.) There is simply no authority which imposes such a burden on the police. "To require law enforcement officers to collect evidence which may or may not yield useful results would compel them to 'gather and collect everything which, with fortuitous foresight, might prove useful to the defense' [citation], and improperly 'cast upon the prosecution the burden of preserving

what may only be termed "potential" evidence . . . .' [Citation.]" (*People* v. *Kane, supra,* 165 Cal.App.3d at p. 485.)

Such an investigatory burden would not only be onerous and frequently futile, it would destroy programs such as Crimestoppers by removing the guarantee of anonymity. Anonymity is the key to such a program. It is the promise of anonymity which allays the fear of criminal retaliation which otherwise discourages citizen involvement in reporting crime. In turn, by guaranteeing anonymity Crimestoppers provides law enforcement with information it might never otherwise obtain. We are satisfied the benefits of a Crimestoppers-type program—citizen involvement in reporting crime and criminals—far outweigh any speculative benefits to the defense arising from imposing a duty on law enforcement to gather and preserve evidence of the identity of informants who wish to remain anonymous.

The asserted need to tape and trace hotline calls to preserve a balance between prosecution and defense is surely the reddest of herrings. Defendant argues that a Crimestoppers-type program is infected with prosecution bias, stating in her brief: " . . . when the callers to the program are guaranteed anonymity, the evidence they give is destroyed as it relates to the defense because defendants have no way of confronting the caller[] or determining if the caller[] might also have exculpatory evidence for the defense." However, the informant simply provided a brief sketch of the facts—information which enabled investigators to trace the getaway vehicle to its owner. A permissive search of the owner's home produced defendant hiding in a closet, and thereafter a photo lineup was assembled and defendant's photograph identified by the victim. It was the victim's identification which resulted in defendant's arrest and conviction, not the informant's statements received over the Crimestoppers hotline.

In asserting that evidence obtained from the investigation resulting from the Crimestoppers hotline is "fruit of the poisonous program" which may not be used in a criminal prosecution, defendant overlooks the fact that anonymous information can and often is passed to law enforcement officials in a manner that cannot be traced. Thus, defendant's position must be that law enforcement officials should not be permitted to act upon anonymous information, however that information is received, unless the identity of the informant can somehow be uncovered, a proposition we find palpably unacceptable. There is no question but that anonymous information often provides a substantial part of the initial investigatory data relied upon by law enforcement agencies. A Crimestoppers-type program does no more than institutionalize the method by which anonymous information may be fed into the investigation pipeline. Were defendant able to show that Crimestoppers information—as opposed to information received anonymously

through other means—somehow results in a substantial number of innocent people being subjected to criminal inquiry, defendant might have a legitimate argument. She makes no such claim. To the contrary, the record reveals nothing more than that Crimestoppers is a conduit through which information is funneled to police.

Finally, it is important to note we are not here concerned with a situation involving an informant who was in the employ of the police (cf. *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 852-853 [83 Cal.Rptr. 586, 464 P.2d 42]), who took direction from the police (cf. *People* v. *Goliday* (1973) 8 Cal.3d 771, 778-782 [106 Cal.Rptr. 113, 505 P.2d 537]), or who had even minimal face-to-face contact with the police. (Cf. *Twiggs* v. *Superior Court* (1983) 34 Cal.3d 360, 366, 368 [194 Cal.Rptr. 152, 667 P.2d 1165]; see Evid. Code, §§ 1040, 1041.) Even in these instances, the People are obligated to do no more than undertake reasonable good faith efforts to locate the informant so that he may be subpoenaed as a defense witness. (See *Eleazer, supra,* 1 Cal.3d at p. 853.) However, where an informant anonymously volunteers information about a crime, the police are under no duty to identify the source as a condition of acting on the information.

The judgment is affirmed.

Carr, J., and Sparks, J., concurred.