The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Robert A. SIEGL, Defendant–Appellant.

No. 93CA1600.

Colorado Court of Appeals, Div. II.

Feb. 8, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Eric V. Field, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Michael J. McCarthy, Hotchkiss, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Robert A. Siegl, appeals his multiple convictions for possession and cultivation of controlled substances. We affirm.

On October 7, 1991, the Undersheriff for Delta County, Colorado, received a Crime Stoppers report from an anonymous female caller identifying the defendant as the owner of a house near Hotchkiss, Colorado. Co-defendant was a tenant. The informant told the Undersheriff that: (1) she had been in the house; (2) she had seen large overhead lights on the second floor; (3) she had been told by the tenant that the tenant and defendant grew marijuana in the house; and (4) she could smell a strong odor of marijuana in

the house. The informant also described the exterior of the house in detail, including the unusual fact that the upstairs windows were covered with tin foil.

For three days after the informant's call, the Undersheriff and a detective for the Delta County Sheriff's Department observed the house. They verified the informant's description of the house and obtained its electric bills for the preceding fifteen months, noting a sudden and substantial increase in electric use during the most recent summer months. They also did a computer check of vehicles registered to the defendant and saw that they were kept at the house in question.

With this information, the detective obtained a search warrant for the house to search for and seize any material evidence which might aid in a prosecution of the defendant for the sale or cultivation of a controlled substance.

Upon execution of the search warrant on August 13, 1991, the Sheriff's department found large quantities of live marijuana plants, psilocybin, mushrooms, Peyote, drug paraphernalia, and numerous instruction books on the cultivation of marijuana. The inside of the house proved to have been accurately described by the informant. Defendant was later arrested and charged with possession and cultivation of controlled substances.

Defendant and his tenant filed pre-trial motions accompanied by affidavits challenging the credibility, reliability, and veracity of the anonymous informant. Defendant requested a veracity hearing to challenge the validity of the search warrant and a court order requiring the prosecution to disclose the informant's identity.

Defendant's affidavits alleged that: (1) he and his tenant had never told anyone that they grew marijuana at the house in question or at any other location; (2) they had never allowed anyone into the house for the several months preceding the date of the execution of the search warrant; and (3) they had never given permission to anyone to enter the house. Defendant therefore insisted that the anonymous informant's statements to the contrary, which were used in the affidavit of

probable cause, must necessarily have been false.

After receiving briefs on defendant's motions, conducting an in-camera hearing with the Undersheriff regarding the informant, and hearing arguments by counsel, the trial court supplied defendant with a partially excised note taken by the Undersheriff during the informant's call. However, the trial court denied defendant's motion for a veracity hearing and his motion to disclose the identity of the anonymous informant.

Just before trial, the Undersheriff received another call from the informant who then revealed her first name. The Undersheriff did not fully identify the informant or obtain her presence before the trial court.

Defendant then filed additional motions to require the prosecution to disclose the informant's identity or, in the alternative, to require the prosecution to disclose all portions of the Undersheriff's notes taken during the informant's calls so that the defendant could identify and locate the informant. The trial court conducted a second in-camera hearing, denied defendant's motions, and ordered certain records, notes, and exhibits sealed in the court record. Defendant was convicted of multiple offenses involving possession and cultivation of a controlled substance.

## I.

Defendant contends that the trial court erred in refusing to require the prosecution either to produce the informant for a veracity hearing or, at least, to disclose the identity of the alleged anonymous informant to help him prepare his defense. We disagree with both contentions.

## A.

Defendant first contends that the trial court erred in refusing to grant a hearing to challenge the veracity of the informant and the validity of the search warrant.

Initially, we address and reject the People's contention that only the veracity of the officer-affiant, and not that of the informant, can be attacked in a veracity hearing. The same contention has been rejected by the

supreme court. *People v. Flores*, 766 P.2d 114, (Colo.1988)(fn.8); *People v. Nunez*, 658 P.2d 879 (Colo.), *cert. granted*, 464 U.S. 812, 104 S.Ct. 65, 78 L.Ed.2d 80, *cert. dismissed*, 465 U.S. 324, 104 S.Ct. 1257, 79 L.Ed.2d 338 (1984).

■ The applicable standard for determining whether an informant's statements established probable cause for a search warrant is the "totality of the circumstances" test. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Pannebaker*, 714 P.2d 904 (Colo.1986).

In *Gates*, the Supreme Court rejected the then-existing so-called *Aguillar/Spinelli* test which required a strict showing of both the basis of the informant's knowledge and his or her reliability largely because of its difficulty in analyzing tips from anonymous informants. Strict application of the veracity prong prohibited a finding of probable cause absent knowledge of an informant's reliability. And, since anonymous or first-time informants cannot be considered reliable, their information was often deemed worthless for purposes of determining probable cause.

The *Gates* court held that sufficient corroboration of an anonymous informant's tip could substitute for an informant's unknown reliability in establishing probable cause by the common sense totality of the circumstances approach. *Illinois v. Gates, supra; People v. Pannebaker, supra.*

Using the *Gates* analysis, in *Pannebaker*, our supreme court applied the totality of the circumstances test in a factual situation similar to the instant case. There, police received a tip from a first-time, confidential informant that Pannebaker was growing marijuana in his home. In addition to detailed descriptions of the operation and the property, the informant mentioned that the upstairs windows of the house were covered by black plastic for climate control and privacy.

Because the informant had no track record, the police could not allege in their affidavit that he or she was reliable. However, there, as here, the police independently investigated the tip to corroborate its details and found: (1) the house was just as the informant had described it, including the unusual window coverings; and (2) the owner had a previous record of marijuana arrests. The supreme court concluded that, when this corroboration was included in the totality of the circumstances, it established probable cause for a search warrant. *People v. Pannebaker, supra.*

In this case, the information was received through the Crime Stoppers telephone line which offers members of the public the opportunity anonymously to provide information to the police about criminal activity. Callers on the Crime Stoppers telephone line are assigned a number which guarantees anonymity and is the only means of identification unless the callers elect to identify themselves.

Here, as in *Pannebaker*, the Undersheriff did not claim that the anonymous Crime Stoppers caller was reliable. Rather, he undertook an independent investigation and corroborated the details given to him by the caller including: (1) ownership of the house, its occupants, and their vehicles; (2) unusual use of tin foil to cover the upstairs windows; and (3) unusual electric usage. Thus, by corroborating a tip of unknown veracity, the Undersheriff established probable cause. *See People v. Pannebaker, supra.*

We thus conclude that defendant's request for a veracity hearing was misplaced. Although such a request might have been justified if the police had asserted the veracity and credibility of the anonymous informant, here, the affiant made no such claim. Rather, the totality of circumstances was based upon the fact of the call, combined with the independent corroboration by the Undersheriff.

We also note that, in the one published opinion we have found involving a Crime Stoppers program, the court held that the police did not have a duty to determine and disclose to defendant the identity of the informant. The court reasoned:

> Such an investigatory burden would not only be onerous and frequently futile, it would destroy programs such as Crimestoppers by removing the guarantee of anonymity. Anonymity is the key to such a

program. It is the promise of anonymity which allays the fear of criminal retaliation which otherwise discourages citizen involvement in reporting crime. In turn, by guaranteeing anonymity Crimestoppers provides law enforcement with information it might never otherwise obtain. We are satisfied the benefits of a Crimestoppers-type program—citizen involvement in reporting crime and criminals—far outweigh any speculative benefits to the defense arising from imposing a duty on law enforcement to gather and preserve evidence of the identity of informants who wish to remain anonymous.

*People v. Callen,* 194 Cal.App.3d 558, 563, 239 Cal.Rptr. 584, 587 (1987).

### B.

■ Furthermore, even if we were to assume defendant was justified in requesting a veracity hearing, we conclude that he was not entitled to such a hearing because he also failed to establish a good faith basis for questioning the informant's truthfulness.

In *People v. Flores, supra,* the supreme court held that a defendant seeking disclosure of the identity of a confidential informant must establish a reasonable basis in fact to believe one of two things: either that the informant does not exist, or that the informant did not give the police the information on which they reportedly relied as probable cause for the arrest or search. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

In *Flores,* the defendant filed three affidavits essentially denying that he had committed the crime. Because of their lack of specificity, the court concluded that they were insufficient to establish the threshold requirement of a good faith or reasonable basis in fact to believe that information contained in the affidavit supporting the search warrant was false.

Here, similar to the affidavits rejected in *Flores,* defendant and his co-defendant submitted affidavits denying that they had let anyone into the house or had discussed their marijuana operation with anyone. They thus asserted that the informant must have entered illegally and lied about the alleged conversations.

■ Self-serving affidavits by defendants are logically equivalent to their not guilty pleas and, if routinely accorded credibility and held sufficient in themselves, would compel veracity hearings in every case. Such is not the case however. Rather, to merit a veracity hearing, a defendant must offer more than his or her bald assertion that an informant does not exist or that the informant's information must be in error. There must be allegations of deliberate falsehood or of reckless disregard for the truth, accompanied by an offer of proof of a specific factual basis for the assertion. *People v. Flores, supra.*

■ Even if we construe defendant's affidavit as an assertion that the informant did not exist, but was a fictitious creation of the Undersheriff to obtain a warrant, we conclude that the trial court's procedures and findings properly disposed of this contention.

The record reflects that the trial court held an *in camera* hearing and examined the Undersheriff's notes of the Crime Stoppers call. *See People v. Dailey,* 639 P.2d 1068 n. 11 (Colo.1982) (approving *in camera* hearings by trial court as appropriate procedure). The court then found that the Undersheriff's notes were authentic, that the Crime Stoppers program was legitimate, and that the anonymous informant existed. These finding counter the defendant's claim that the informant was fictitious.

■ As for the defendant's claim that the informant could not have observed his marijuana operation without having illegally entered his home, such an allegation, even if true, would not affect the legitimacy of the People's case. A wrongful search and seizure by a private individual does not violate the Fourth Amendment and require suppression of evidence. *See Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

Here, the trial court found no basis to believe the anonymous informant was an agent of the police. Defendant does not contest that finding.

### C.

■ Contrary to defendant's contention, the trial court's statement that a veracity hearing "may have been warranted but was rendered impossible by the informant's anonymity" does not require a different result.

■ There is no fixed rule regarding disclosure of informants, and the decision of whether to order disclosure is committed to the sound discretion of the trial court. *People v. Dailey, supra.* A balancing test must be applied which considers, *inter alia,* the public interest in protecting the flow of information to law enforcement authorities and the availability of the informant. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *People v. Callen, supra.* (police have no duty to determine and disclose to defendant the identity of an anonymous informant providing information through Crime Stoppers program).

Here, we conclude the trial court did not abuse its discretion in considering the fact that the Crime Stoppers' informant was unknown to the police and in concluding that such anonymity served an important public interest which outweighed the defendant's request for disclosure.

In summary, the trial court did not err in denying defendant's motion for a veracity hearing and in denying defendant's request for disclosure of the informant.

### II.

■ Defendant next argues that he needed access to the anonymous informant in order to prepare his defense. Characterizing the informant as the eyewitness to a crime, he asserts that the informant could provide information material to his defense and, therefore, that the police had an affirmative duty to help him locate the informant. We are not persuaded.

Defendant was tried for possession of controlled substances and cultivation of marijuana. The essence of this crime is that controlled substances were found and marijuana was growing in defendant's house. Defendant has not specified how the anonymous informant could offer information which might negate any element of this crime such as the existence of the marijuana or his ownership and control of the place where it was found. Whatever the anonymous informant saw was also seen by defendant, his tenant, and the law enforcement officers who executed the search warrant on defendant's house. The evidence here was found in the house and defendant has not alleged any variance in the eyewitnesses' accounts.

Accordingly, once her tip had been corroborated and probable cause to search had been established, the anonymous informant's existence became irrelevant to this case. By corroborating the information, the People did not rely on the informant's unestablished credibility. And, the evidence resulting from the search speaks for itself. *See People v. District Court,* 904 P.2d 874 (Colo.1995); *People v. Bueno,* 646 P.2d 931 (Colo.1982).

In sum, we perceive no abuse of discretion in the trial court's ruling denying defendant's request for production of the informant. *See People v. Villanueva,* 767 P.2d 1219 (Colo. 1989); *Roviaro v. United States, supra; People v. Callen, supra.*

Judgment affirmed.

CASEBOLT, J., concurs.

CRISWELL, J., specially concurs.

Judge CRISWELL specially concurring.

Because I agree with the analysis contained in part IB of the majority's opinion, I need not, and I do not, consider the issue addressed in part IA. I do, of course, concur in the result.