The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Sireino Joe MARTINEZ, Defendant–
Appellant.

No. 00CA0175.

Colorado Court of Appeals,
Div. III.

Aug. 30, 2001.

As Modified on Denial of Rehearing
Nov. 1, 2001.

Certiorari Granted Aug. 5, 2002.

Ken Salazar, Attorney General, Evan W. Jones, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Linda Perkins Cooke, L.L.C., Linda Perkins Cooke, Boulder, CO, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Sireino Joe Martinez, appeals a judgment of conviction entered upon jury verdicts finding him guilty of possession of a schedule II controlled substance (cocaine), a class four felony, and possession of drug paraphernalia, a class two petty offense. Defendant also contests his habitual criminal adjudication and the ninety-six year sentence to the Department of Corrections. We affirm the judgment, reverse the sentence, and remand for resentencing.

## I. Background

Two confidential informants purchased marijuana on several occasions from defendant's son. On one of those occasions, defendant's son reportedly told the informant that defendant was living with him and intended to take over drug trafficking in the area.

A third confidential informant told police that he had purchased a large quantity of methamphetamine, cocaine, and marijuana from defendant and that defendant told him

that he planned to control drug trafficking in the area.

The police obtained a warrant to search the residence occupied by defendant, defendant's son, the son's girlfriend and child, and two of defendant's friends. From the east bedroom, police seized a gun, money, and a small bag of marijuana; from the bathroom, a three-beam scale; from the freezer, a pound of marijuana; and from the west bedroom, seven pounds of marijuana, five bags of cocaine, five guns, ammunition, money, and drug paraphernalia.

Subsequently, defendant was charged with possession of a schedule II controlled substance (cocaine) with intent to distribute, possession of a schedule II controlled substance (cocaine), possession of marijuana with intent to distribute, possession of eight or more ounces of marijuana, possession of drug paraphernalia, one special drug offender count, and four habitual criminal counts.

At trial, defendant's son admitted selling marijuana and owning the marijuana in the freezer as well as the items seized from the east bedroom. Both he and his girlfriend, however, testified that defendant and his two friends had been staying in the west bedroom and that everything the police seized from that bedroom belonged to defendant and his friends.

According to the son, defendant was dealing drugs out of the house. He testified that the marijuana in the freezer had come from defendant and that the number of people coming to the house for very short visits increased after defendant moved in. He denied ever dealing cocaine, but saw defendant hand a white powdery substance to someone around the time the police searched the residence.

The defense attempted to impeach defendant's son by eliciting evidence that, while in jail, the son initially had claimed ownership of all the drugs and guns and that the son had lied to the police, had been convicted of perjury, and had an obvious motive to lie. Further, the defense elicited testimony that defendant was in the bathroom, not the west bedroom, at the time the police arrived to search the residence, that none of the personal items in the west bedroom could be positively identified as defendant's, and that none of the fingerprints suitable for comparison on the drug packaging or weapons were defendant's.

The jury found defendant guilty only of possession of a schedule II controlled substance (cocaine) and possession of drug paraphernalia. Because the jury also determined that he possessed or had available for use a deadly weapon during his crimes, defendant qualified as a special drug offender for sentencing purposes.

The trial court adjudicated defendant an habitual criminal based on evidence of four prior felony convictions. Giving effect to the jury's special drug offender finding, the court treated defendant's conviction of possession of a schedule II controlled substance as if it were a class two felony; and, multiplying by four the twenty-four-year maximum term in the presumptive range for a class two felony, the court sentenced him to ninety-six years' incarceration.

## II. Confidential Informants

■ Defendant contends that the trial court erred in refusing to reveal to him the identities of the confidential informants. We disagree.

At the hearing on his motion, defendant argued only for the disclosure of the identity of one confidential informant who purchased marijuana from defendant's son. According to defendant, that informant could testify that defendant was not in the residence selling drugs during the times the informant was there and that informant possibly could provide evidence to impeach the testimony of defendant's son.

■ The government has a qualified privilege to choose not to disclose the identity of a confidential informant. *People v. District Court*, 767 P.2d 1208, 1213 (Colo. 1989). However, the "privilege is not absolute and must give way 'where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.' " *People ex rel. Sandstrom v. District Court*, 904 P.2d

874, 877 (Colo.1995)(quoting *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957)).

A defendant has an initial burden of establishing a reasonable basis in fact to believe an informant is a likely source of relevant and helpful evidence to the accused. *People v. District Court, supra,* 767 P.2d at 1214. An accused is not entitled to the disclosure of the informant based upon the bare assertion that his or her defense requires it, or upon mere speculation or conjecture about the information the informant might have supplied. *People v. District Court, supra,* 767 P.2d at 1216.

If a defendant meets the initial burden, a court then must balance the public's interest in protecting the flow of information to law enforcement authorities about criminal activity against defendant's need to obtain evidence for the preparation of a defense. *People v. District Court, supra,* 767 P.2d at 1213.

Ultimately, the decision whether to order disclosure is committed to the sound discretion of the trial court. *People v. District Court, supra,* 767 P.2d at 1214; *People v. Siegl,* 914 P.2d 511, 516 (Colo.App.1996).

Here, the trial court refused to disclose the confidential informant's identity because: (1) defendant had not been charged in connection with any of the prior controlled purchases; (2) the son's sale of marijuana on another occasion was not inconsistent with defendant's guilt on this occasion; and (3) defendant was given alternative means by which to elicit evidence of anything the confidential informant reported to the police.

Cases in which appellate courts have found "an abuse of discretion in the trial court's refusal to order disclosure of an informant's identity have typically involved an informant who is an eyewitness or earwitness to the crime itself." *People v. Garcia,* 752 P.2d 570, 579 (Colo.1988).

In this case, the confidential informant was an eyewitness or earwitness not to the crimes for which defendant was charged but to prior crimes committed by defendant's son. The prosecution did not elicit evidence of those other crimes, and as the trial court found, such evidence was of little legitimate probative value to the defense.

We reject defendant's argument that the trial court misapprehended the importance of *another* informant's having witnessed a prior drug transaction involving defendant himself. The prosecution did not introduce evidence of this transaction, and defendant never indicated to the trial court that he was interested in this particular informant's identity.

Nor are we persuaded by defendant's arguments that testimony by the informants was necessary to impeach the son about the amount of marijuana and the number and type of weapons the son claimed to have had as of the time of the controlled purchases. In light of the alternative means by which defendant could elicit this evidence, and the abundance of otherwise available evidence to impeach the son, defendant failed to demonstrate a convincing need for disclosure of the informants' identities. *See People v. District Court, supra,* 767 P.2d at 1215–16 (rejecting argument confidential informant necessary to provide impeachment evidence).

Under these circumstances, we perceive no abuse of the court's discretion in failing to disclose the informants' identities.

### III. Drug Odor Evidence

Defendant next contends that the trial court erred in receiving expert evidence from a canine handler that a specially trained dog detected drug odor on the money. According to defendant, such evidence should not have been admitted absent some showing of the dog's reliability in detecting drugs. We conclude that reversible error did not occur.

Assuming, without deciding, that defendant were correct about the type of foundation necessary for receipt of this type of evidence, *see Brooks v. People,* 975 P.2d 1105, 1114 (Colo.1999)(in assessing admissibility of proffered dog scent-tracking evidence, court should consider, among other things, "whether the dog was found by experience to be reliable in pursuing human tracks"), any error was rendered harmless by the canine handler's subsequent testimony that she and

the dog had worked together for five years, that the dog had performed approximately one thousand narcotics sniffs (one hundred on money), and that the dog had never alerted officers about money that was determined to be clean. *See People v. Fuller,* 788 P.2d 741, 745–46 (Colo.1990)(trial court's failure to make requisite findings for admissibility of hearsay harmless where record supported its admission). *See also United States v. Beckman,* 222 F.3d 512, 523–24 (8th Cir.2000)(premature admission of co-conspirator statements harmless).

### IV. Expert Testimony

■ Defendant contends that the trial court erred in allowing a police officer to provide expert testimony that the residence was being used as a distribution center for drugs. However, inasmuch as defendant was not convicted of a crime involving either distribution or intent to distribute drugs and the officer related no opinion about whether defendant possessed drugs, any error in this regard was not prejudicial. See *People v. Quinn,* 794 P.2d 1066, 1068 (Colo.App. 1990) (challenged evidence related to counts as to which defendant was found not guilty).

### V. Evidence of Habitual Criminality

■ Defendant contends that the evidence was insufficient to support his adjudication as an habitual criminal. In support of this contention, he argues that: (1) one set of documents was forwarded by a Nevada Department of Prisons' case records manager rather than by the clerk of court where the judgment was entered; (2) that neither set nor another set of documents was sufficiently authenticated because no certification was made either that the judges' signatures on the judgments of conviction were genuine or that they were in fact judges when they signed the judgments; and (3) he was not, in any event, sufficiently identified as the person who had been previously convicted in two cases. We are not persuaded.

■ "Nothing in [the habitual criminal] statute requires that the copies to be introduced come directly and exclusively from the particular courts of record." *People v. Copeland,* 976 P.2d 334, 340 (Colo.App.1998)(ad-missibility of Department of Correction records to support prior convictions), *aff'd,* 2 P.3d 1283 (Colo.2000).

Nor does CRE 902 require that each and every signature contained within an otherwise properly authenticated set of public documents be certified or embossed with a seal. Copies of public records are self-authenticating and require no extrinsic evidence to prove their authenticity if they "are certified as correct by the custodian or other person authorized to make a certification, by certificate complying with paragraph (1), (2), or (3) of this rule." CRE 902(4).

Here, the two contested sets of documents contain Department of Prisons or court records that are certified as true and correct copies by a case records manager or court clerk, both acting as either the custodian of the records or as a person authorized to make such certification. The case records manager's authority and attestation is certified under seal by the Nevada Secretary of State; the court clerk's authority and attestation are certified under seal by a district court judge of the State of Nevada. These certifications comply with CRE 902(2). *See People v. Copeland, supra.*

■ Finally, we reject defendant's contention that he was not sufficiently identified as the individual who was convicted in two of the prior felony cases. In the first case, his identity was sufficiently established through a comparison of the fingerprints contained in the documents with defendant's fingerprints. *See People v. Bernabei,* 979 P.2d 26, 31 (Colo. App.1998). In the second case, although the court documents contained neither photographs nor fingerprints, a separate, certified set of Department of Prisons records contained a copy of the mittimus for that conviction, as well as identifying fingerprints and a photograph.

We conclude that the evidence thus was sufficient to sustain defendant's adjudication as an habitual criminal. *See People v. Bernabei, supra; People v. Copeland, supra.*

### VI. Length of Habitual Offender Sentence

■ Finally, defendant contends that the trial court erred in sentencing him as an

habitual criminal to a term of ninety-six years' incarceration. More specifically, he asserts that the court erred in calculating the habitual criminal sentence based on the twenty-four-year maximum term in the presumptive range for a class two felony used to determine sentences under the special drug offender statute. *See* §§ 18–1–105(1)(a)(V)(A), 18–18–407(1)(a), C.R.S.2001. We agree.

Under the applicable terms of the habitual criminal statute, defendant was required to be

> punished for the felony offense of which such person is convicted by imprisonment ... for a term of four times the maximum of the presumptive range pursuant to section 18–1–105, C.R.S., for the class of felony of which such person is convicted.

*See* § 16–13–101(2), C.R.S.2001.

The interpretation of statutes presents a question of law subject to *de novo* review. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000).

In interpreting § 16–13–101(2), our task is to ascertain and give effect to the intent of the General Assembly. *People v. Swain*, 959 P.2d 426, 429 (Colo.1998). To discern legislative intent, we look first to the plain language of the statute itself. *People v. McNeese*, 892 P.2d 304, 310 (Colo.1995). When the statutory language is clear and unambiguous, we apply the statute as written without resort to interpretive rules and statutory construction. *People v. Zapotocky*, 869 P.2d 1234, 1238 (Colo.1994).

Here the statutory language is clear: punishment as an habitual criminal is explicitly linked to the maximum term of the presumptive range of the "class of felony" for the "offense" of which the individual has been convicted.

As pertinent here, the only felony "offense" of which defendant was convicted was possession of a schedule II controlled substance (cocaine), which is a class four felony punishable by a presumptive range sentence of two to six years. *See* §§ 18–1–105(1)(a)(V)(A), 18–18–405(1)(a), (2)(a)(I), C.R.S.2001. The special drug offender statute did not reclassify his offense as a class

two felony. Nor did it create a substantive criminal offense. Had the General Assembly intended to reclassify the offense, it would have done so explicitly. *See Mason v. People*, 932 P.2d 1377, 1380 (Colo.1997)(had the legislature intended statute to achieve a certain result, it would have employed terminology clearly expressing that intent, as it had done in other circumstances).

Instead, in the special drug offender statute, the General Assembly identified circumstances, apart from the elements of the offense, that, if found to be present, would require enhanced sentencing for "a term of at least the minimum term of years within the presumptive range for a class 2 felony but not more than twice the maximum term of years within the presumptive range for a class 2 felony." *See* § 18–18–407(1); *Vega v. People*, 893 P.2d 107, 111–13 (Colo.1995).

Because the special drug offender statute changes the potential punishment for, but not the felony classification of, the offense for which defendant was convicted, we conclude that the special offender statute plays no part in determining the length of defendant's habitual criminal sentence. This conclusion comports with the recognition that the habitual criminal statute is to be construed narrowly in favor of the accused. *See People v. Nees*, 200 Colo. 392, 396, 615 P.2d 690, 693 (1980).

Consequently, we hold that defendant's habitual criminal sentence must be calculated by quadrupling the six-year maximum term in the presumptive range for his class four felony offenses. Accordingly, he was subject to a mandatory habitual criminal sentence of twenty-four, not ninety-six, years' incarceration.

## VII. Sentencing on Remand

We note that, besides being adjudicated an habitual criminal based on his recidivism, defendant was also adjudicated a special drug offender based on his possession of, or having had available for use, a deadly weapon during the crimes for which he was convicted. As a special drug offender, defendant was subject to a mandatory sentence of between eight and forty-eight years incarcer-

ation. See §§ 18–1–105(1)(a)(V)(A), 18–18–407(1).

Both the habitual criminal and special drug offender statutes state that a defendant "shall" be sentenced in accordance therewith. See §§ 16–13–101(2), 18–18–407(1). The special drug offender statute also provides that "[n]othing in this section shall preclude the court from imposing a greater sentence set forth in any other statute." See § 18–18–407(5), C.R.S. 2001.

It is clear from these provisions and prior case law that defendant must receive at least a sentence of twenty-four years' incarceration under the habitual criminal act. See *People v. Montgomery,* 737 P.2d 413, 417 (Colo. 1987) (sentencing court may not ignore the penalty provisions of the habitual criminal act). Giving effect also to his adjudication as a special drug offender, we conclude that defendant is subject to a mandatory sentence of no less than twenty-four years nor more than forty-eight years incarceration.

Accordingly, the judgment of conviction is affirmed, the sentence is vacated, and the case is remanded for resentencing consistent with the views expressed in this opinion.

MARQUEZ and PIERCE *, JJ., concur.