The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Robert A. SHANNON, Defendant-Appellee.

No. 82SA296.

Supreme Court of Colorado, En Banc.

June 25, 1984.

standard of beyond a reasonable doubt required for conviction.

Robert L. Russel, Dist. Atty., Robert B. Harward, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

No appearance by defendant-appellee.

KIRSHBAUM, Justice.

The People, pursuant to section 16–12–102, 8 C.R.S. (1978),[1] have filed this direct appeal seeking review of various rulings which were made by the trial court during the trial of defendant, Robert A. Shannon, on charges of attempted sexual assault in the first degree, murder in the first degree and crime of violence.[2] We approve the trial court's rulings.

I

The record on appeal reveals the following pertinent facts. During the evening of April 24, 1981, Sharron Shannon, defendant's ex-wife, and Charles Catalano were sitting on a couch in the family room of her Colorado Springs home watching television. They heard a noise, but Catalano discovered nothing when he went upstairs to investigate. Shannon then heard another noise, and when Catalano went upstairs this time he discovered defendant. At this point, as Shannon ran from the house, she heard a loud noise which, she testified, sounded like a shot. According to Shannon, defendant caught up with her, assaulted her, and attempted to sexually assault her. Shannon ultimately escaped and called the police, who found Catalano's body when they entered the house.

Shannon testified on direct examination about her relationship with defendant prior to this incident and about several events which took place during the pendency of the divorce proceedings. She stated that prior to the entry of a divorce decree defendant on more than one occasion had threatened to kill Catalano. On recross-examination, Shannon was asked what she and Catalano were doing prior to the time she "first heard the noises." She replied that "[w]e watched TV for a while and we talked and we made love."

Testifying in his own behalf, defendant stated that on the night of April 24, 1981, he received a telephone call from a woman he thought was his wife; that the caller spoke the word "Bob," at which point the connection was interrupted; and that after unsuccessfully attempting to contact Shannon, he armed himself with a pistol and went to Shannon's home to determine whether she was in any kind of danger. Defendant stated that when he walked to the back window of the home to determine if any intruders were in the house, he ob-

---

1. Section 16–12–102, 8 C.R.S. (1978), states that "[t]he prosecution may appeal any decision of the trial court in a criminal case upon any question of law." This section, however, does not "authorize placing the defendant in jeopardy a second time for the same offense."

2. The jury found defendant guilty of criminally negligent homicide, a lesser-included offense of first degree murder; not guilty of attempted sexual assault; and not guilty of crime of violence.

served his ex-wife lying on the couch, nude, with a man standing over her. Defendant testified that he entered the house through a bathroom window, confronted Catalano at the top of the stairs to the family room, and that due to poor lighting conditions he was unable to ascertain Catalano's identity. According to defendant, a struggle ensued and his pistol accidentally discharged, resulting in Catalano's death. Defendant denied Shannon's allegations that he attempted to sexually assault her that night, denied threatening Catalano during the divorce proceedings, and stated that during the pendency of the divorce Shannon was not afraid of him. He also stated that following the shooting he looked into Shannon's eyes and "never saw so much hate and rage."

On recross-examination, defendant was asked the following question:

Would you have an estimate of the time from when you first saw Mrs. Shannon without any clothes on until you confronted Mr. Catalano at the top of the stairs inside the house?

Defendant responded as follows:

I—probably a few minutes. Probably was into the minutes. I don't know how many.

At the close of defendant's case-in-chief, the prosecution made an offer of proof respecting rebuttal witnesses. The prosecution first proposed to call Shannon's employer to testify that during the pendency of the divorce, at their place of work, Shannon had tearfully asked him whether she should consider certain threats made by defendant to be serious. The prosecution also proposed to recall Shannon to testify that after she and Catalano engaged in sexual intercourse she got dressed and that the encounter between Catalano and defendant occurred some half hour later.

With regard to the proposed rebuttal testimony of Shannon, the trial court denied the prosecutor's request on the ground that such denial was an appropriate sanction to impose upon the prosecution for its failure to disclose evidence to the defense pursuant to Crim.P. 16I(a)(3). The record does not contain the trial court's ruling denying the admission of the testimony of Shannon's employer.[3] Upon defendant's conviction for criminally negligent homicide, the People perfected this appeal.

## II

The People contend that the trial court abused its discretion in excluding the rebuttal testimony of Shannon and Shannon's employer. We disagree.

In *Cheatwood v. People*, 164 Colo. 334, 341, 435 P.2d 402, 405 (1967), this court described the basic principle of discovery in criminal proceedings in Colorado by stating as follows:

[I]t is the duty of both the prosecution and the courts to see that no known evidence in the possession of the People which might tend to prove a defendant's innocence is withheld from the defense before or during trial. Evidence which might be helpful to a defendant and which is suppressed by the police or the prosecution or which is ignored by a trial court when presented to it, results in a denial of due process of law just as surely as would, for example, the knowing use of perjured testimony. (citation omitted)

*See also People v. Austin*, 185 Colo. 229, 523 P.2d 989 (1974). This prosecutorial duty to disclose known exculpatory information is now codified in Rule 16I(a)(3) of the Colorado Rules of Criminal Procedure. *See* Note, *A Proposed Rule of Criminal Pretrial Discovery*, 49 U.Colo.L.Rev. 443 (1978). The rule states in part that "the prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which *tends* to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor."[4] Crim.P. 16I(a)(3) (emphasis added).

---

**3.** The People assert in their brief that this ruling occurred in an "off the record" hearing.

**4.** In this case, defendant requested "[a]ny material or information which might tend to negate

The trial court found that although the prosecution knew long before the commencement of trial that Shannon and Catalano had engaged in sexual relations on the couch prior to the shooting, that evidence was not disclosed to defense counsel. The trial court concluded that such evidence, when coupled with the possibility that the defendant had witnessed the sexual intercourse, tended to reduce defendant's guilt with respect to the charge of first degree murder and, therefore, should have been disclosed pursuant to the rule.

■ The People argue that prior to defendant's testimony at trial, there was no indication from the defendant's theory of the case or otherwise that defendant may have witnessed the event and, therefore, that the prosecutor could not have known that the evidence of sexual intercourse was potentially exculpatory. The prosecutor's duty to disclose potentially exculpatory evidence, however, is not limited by the circumstances of known defense theories or considerations of relevancy. The facts known to the prosecution—that an act of sexual intercourse between Shannon and Catalano occurred some short time prior to their realization that defendant was in the house—were sufficient to suggest that the evidence was relevant to the *mens rea* element of the first degree murder count and, therefore, exculpatory in nature. Considering the circumstances surrounding this homicide, as well as the fact that defendant was also accused of attempted sexual assault, we agree with the trial court that the evidence should have been disclosed under Crim.P. 16 I (a)(3).

The trial court, having concluded that the prosecution improperly failed to disclose the evidence of the sexual encounter between Shannon and Catalano, did not abuse its discretion in refusing to permit the prosecution to introduce evidence on rebuttal to

the guilt of the Defendant as to the offense charged, or would tend to reduce the Defendant's punishment therefor...."

**5.** An *in camera* hearing concerning the admissibility of this similar transaction evidence was held pursuant to *Stull v. People,* 140 Colo. 278,

establish a lengthy lapse of time between the sexual encounter and the shooting. Moreover, we decline to address the People's contentions regarding the testimony of Shannon's employer because a specific ruling denying the admission of such testimony does not appear in the record.

### III

The People also challenge certain evidentiary rulings of the trial court. The People first assert that the trial court erroneously prohibited the introduction of evidence that defendant sexually assaulted Shannon in early January 1981. The evidence, characterized as a similar transaction by the prosecution, was offered to establish defendant's motive and intent. The trial court apparently concluded that Shannon consented to the intercourse on this date,[5] and also indicated that no crime of sexual assault, as defined by the marital exception provision of section 18–3–409, 8 C.R.S. (1978), was committed at that time.

The People argue that conduct need not be a crime to be admissible as similar transaction evidence, and that, therefore, the trial court erred in denying the request to permit the jury to consider evidence of the January 1981 incident. In *People v. May,* 182 Colo. 29, 511 P.2d 22 (1973), we pointed out that in an appeal filed by the prosecution, no review of an alleged error of law will be conducted if to do so amounts to no more than a mere academic exercise. The evidence offered at trial here, as the trial court stated, was "excluded for two reasons." The People have not challenged the trial court's alternate basis for exclusion—that the evidence could not be considered similar transaction evidence because on this occasion Shannon consented to the sexual intercourse. We, there-

344 P.2d 455 (1959). The transcript of this hearing consistently used the words "conceptual," "conceptually" and "quasi-conceptually" for the words "consensual," "consensually" and "quasi-consensually."

fore, decline to address the issue postured for appeal.[6]

The People also contend that the trial court erred in conducting three *in camera* hearings prior to the examination of three prosecution witnesses. The hearings were held, apparently, to permit the trial court to rule on the admissibility of certain proposed testimony; the record also indicates that in at least one instance the defendant and the trial court considered such hearings to be required by *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959). The People do not challenge the correctness of the trial court's rulings respecting the admissibility of the proffered evidence.[7]

 Colorado Rule of Evidence 103(c) states as follows:

> Hearing of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

This rule permits a trial court to prohibit any line of questioning without having inquiries on questionable evidence revealed to the jury. 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[05] (1982) (construing identical federal rule). Thus, a trial court is justified in requiring an *in camera* offer of proof as a prophylactic device to prevent inadmissible evidence from being suggested to the jury. *Id.* Cf. *United States v. Zarra*, 298 F.Supp. 1074 (M.D.Pa. 1969), *aff'd*, 423 F.2d 1227 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970). We conclude that the trial court did not abuse its discretion in this first degree murder case by requiring the prosecution to present an offer of proof in these three instances.

## IV

 The People finally contend that the trial court erred in concluding that a letter from defendant to his ex-wife and the testimony of a witness regarding pre-April 24 encounters with defendant were irrelevant and, therefore, inadmissible. The letter which constitutes this exhibit has not been transmitted on appeal; we, therefore, do not address this contention. We also conclude that the trial court did not abuse its discretion in ruling that the testimony of this witness was not relevant. *See People v. Lowe*, 660 P.2d 1261 (Colo.1983). *See also* CRE 402 and 403.

Rulings approved.

NEIGHBORS, J., did not participate.

---

**6.** The record does not disclose the precise rationale for the trial court's utilization of § 18–3–409, 8 C.R.S. (1978), nor does it suggest, as the People's brief asserts, that the trial court ruled that no act could ever be considered a "similar transaction" unless such act were in fact a "crime."

**7.** Two of the witnesses were permitted to testify, although one of these was prohibited from giving certain opinion testimony. The third witness' testimony was excluded.