The **PEOPLE** of the State of Colorado, Plaintiff-Appellant,

v.

Chris **MILLITELLO,** Defendant-Appellee.

No. 84SA389.

Supreme Court of Colorado, En Banc.

Sept. 3, 1985.

---

Milton K. Blakey, Dist. Atty., Glenn Crow, Deputy Dist. Atty., Glenwood Springs, for plaintiff-appellant.

James P. Swanseen, Glenwood Springs, for defendant-appellee.

ROVIRA, Justice.

Pursuant to C.A.R. 4.1, the People in this interlocutory appeal challenge an order of the trial court granting the defendant's motion to suppress certain tangible evidence. We affirm.

## I.

On September 15, 1983, officers of the Rifle Police Department executed a search warrant issued that day to search the defendant's residence at "2439 Rail Avenue, Rifle, Colorado" for cocaine and any paraphernalia, money, or records associated with the use, possession, cutting, dealing, or distribution of cocaine. Among the items seized were a tin cannister with suspected cocaine and a "sno-seal" envelope containing cocaine. The defendant was later arrested and charged with possession of and possession with intent to sell cocaine. §§ 12–22–310, 5 C.R.S. (1984 Supp.), and 18–18–105(2)(a), 8 C.R.S. (1984 Supp.).

The warrant was issued by a county judge relying upon an affidavit of Officer Robert deHaas which stated in pertinent part:

III. That on September 15, 1983, John Lister [on working undercover for the Rifle Police Department] gave me the following information:

. . . .

2. That on July 8, 1983, John Lister bought one gram of cocaine from Joseph Benz in the Cattle Company Bar;

a. That on August 31, 1983, John Lister again approached Joe Benz for a gram of 'Coke'. Benz said, 'Yes', but

that John would have to take him to someone's house to get it;

b. That John took Benz to the 2600 Block of Rail Avenue and parked on the East side of the Street;

1. That John watched Benz walk across the street and to the North and enter a residence;

2. That the residence is a residence that John had been to before and knew it to be the residence where Chris Millitello lives;

3. That John had given Benz $120.00 before Benz went to the residence;

4. That when Benz came back he handed John the cocaine in a 'sno-seal' bindle;

5. That John on the same date, field tested the suspected cocaine and got a positive result. This was done in the presence of Lt. Meisner.

Before trial, the defendant filed a motion to suppress all physical evidence seized pursuant to the search warrant, claiming that the search was illegal because the warrant was not based upon probable cause. To meet the procedural requirements set forth in *People v. Dailey*, 639 P.2d 1068 (Colo.1982), for a veracity hearing,[1] the defendant filed a supplement to the motion to suppress specifying that some of the information in subparagraph III.2.b. of the affidavit supporting the warrant was incorrect. To show a good faith basis for the challenge, an affidavit by S.A. Rhoades, the defendant's investigator, was attached to the supplemental motion to suppress. Rhoades indicated that certain of the information in subsection III.2.b. was false because Lister could not have observed what he said he had observed from a location on the 2600 block of Rail

Avenue. A hearing was held on the motion on March 8, 1984.

In its written order which issued one day after the hearing, the trial court found:

Evidence at the hearing on the motion establishes that the information in subparagraph b of the warrant [subsection III.2.b.] concerning having parked on the east side of the 2600 block of Rail Avenue is in fact false. Officer deHaas testified that Officer Lister described a location which Officer deHaas knew to be on the 2400 block of Rail Avenue and that as a result of his error in drafting the warrant he identified the location as the 2600 block when he meant the 2400 block of Rail Avenue. The testimony of Benz at the hearing on motions established that the front door of the Millitello residence was probably not observable from the location on the 2400 block of Rail Avenue where he and Lister parked. Lister did not testify at the hearing on motions.

The court concluded that the information concerning the location from which the observation was made by Officer Lister, i.e., the 2600 block of Rail Avenue, must be stricken from the affidavit. The court declined to strike from the affidavit the information that an observation was made or what that observation was. After striking the false information from the affidavit, the court reexamined the warrant for probable cause in accordance with *Dailey*.[2] Finding no absence of probable cause, the defendant's motion to suppress was denied.

The case proceeded to trial on March 14, 1984, yet the sufficiency of the affidavit supporting the search warrant remained at issue. Under direct examination during the prosecution's case-in-chief, Lister, the

---

1. As conditions to a veracity hearing testing the truth of averments contained in a warrant affidavit, a motion to suppress must (1) be supported by one or more affidavits reflecting a good faith basis for the challenge and (2) contain a specification of the precise statements challenged. *Dailey,* 639 P.2d at 1075.

2. If the source of the error is intentional falsehood or reckless disregard for the truth on the part of the officer-affiant, the statements must be stricken from the affidavit; and if the remaining statements are insufficient to establish probable cause, the motion to suppress must be granted. *Dailey,* 639 P.2d at 1075. *See also Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

undercover officer, revealed that he had never actually seen Benz enter the Millitello residence on August 31, 1983, but merely go toward what he knew to be the residence. On cross-examination, Lister further revealed that he had lost sight of Benz around the corner of another building located just south of the Millitello residence. Since this information was contrary to the information found in paragraph III.2.b. of the affidavit supporting the warrant, the defense renewed its motion to suppress. It argued that if the information directly concerning Lister's observations was taken out of the warrant, probable cause could not be found. The trial court agreed that the warrant would fail if the information was removed, but because it found insufficient basis in the record to give rise to a finding that Lister had a careless disregard for the truth in giving the information, the trial court refused to strike the language from the warrant at that time.

The defense then called officers Lister and deHaas to the stand. The record demonstrates that in doing so the defense attempted to show that either deHaas or Lister, or both, intentionally or recklessly allowed the false information to be used to establish probable cause. At the close of the evidence, the defense asked the trial court to reconsider its suppression ruling once more.

The trial court found that Lister neither intended nor recklessly allowed the false information to be used, stating that he "was just so inexperienced and untrained and inarticulate that he didn't know the significance of what it was he was doing." In regards to deHaas, the trial court found that he was not trying to insulate Lister from a possible perjury charge by putting together the affidavit himself and had no knowledge of the falsity of the statements until Lister first told him about the problem during or shortly after the first suppression hearing. Characterizing the challenge as an extremely close one, the trial court allowed the information to stand in the warrant.

This ruling was based, in part, on the assumption that the prosecution was not aware of this false information. The trial court stated:

I hope that this was a surprise to the prosecution today because I think that the prosecution had the responsibility of disclosing that, once they knew it.

I am going to operate on the assumption that even deHaas, who was there [at the suppression hearing] didn't take it any farther.

Indeed, no evidence in the record at that time indicated that the prosecution was aware of the incorrect information. Thus, on March 16, 1984, the case went to the jury which found the defendant guilty of all charges.

On April 16, 1984, the defendant filed a motion for a new trial citing twenty-two grounds for reversal. Later, the defendant filed a supplemental motion for a new trial or, in the alternative, a motion for a new trial based upon new evidence, which alleged that since the verdict was entered the defendant had "learned that the District Attorney who prosecuted the case knew before trial that John Lister had supplied false information for the application of the search warrant."

After a hearing on the motions, the trial court ruled that the prosecutor knew, "at least after the suppression hearing," that what was attributed to Lister in the affidavit was false information. The trial court accepted the prosecutor's testimony that he did not think the discrepancy was significant because Lister did see Benz "go to" instead of enter the defendant's residence, but disagreed with the prosecutor's view that this fact was not significant. Since the prosecution failed to disclose this fact to the defense and to the court earlier in the proceedings, the motion for a new trial was granted.

The defendant filed another motion to suppress before the second trial, again citing the fact that, contrary to the affidavit, Lister did not actually see Benz enter the defendant's residence. After a hearing, the trial court concluded:

In light of the disclosure to the Court only after trial that the prosecutor knew that Lister did not see Benz enter the defendant's residence ... the totality of the circumstances demand that the erroneous material be excised from the affidavit and that when removed, the affidavit is insufficient to establish probable cause to believe contraband was present at the residence searched.

Although the trial court granted the motion to suppress, it refused to grant the defendant's motion to dismiss on the basis of the prosecution's misconduct.

On appeal, the People contend that the trial court erred in considering the prosecution's failure to disclose the false information when ruling on a *Dailey* veracity challenge because those actions are unrelated to the knowledge and intent of the affiant. The defense counters that, although the prosecutorial misconduct in this case may not have been so improper as to warrant dismissal, it was well within the trial court's discretion to strike the erroneous material from the affidavit. The defense further contends that the trial court effectively reversed its ruling in the first trial, finding that the false statements of Lister should have been stricken under *Dailey* because they were intentionally or recklessly included in the affidavit.[3]

## II.

■ We agree with the People that the prosecution's failure to disclose its knowledge that the affidavit contained a false statement which would throw a finding of probable cause into doubt cannot be considered the "source" of the error in a *Dailey* veracity challenge. Following *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), we held in· *Dailey* that the fourth amendment of the United States Constitution requires false statements in affidavits to be stricken if the source of the error is intentional falsehood or reckless disregard on the part of the officer affiant. 639 P.2d at 1075. We also indicated that if the error resulted from some other source, the question of appropriate sanctions, if any, would be left to the discretion of the trial court. *Id.* *See also People v. Winden*, 689 P.2d 578, 582 (Colo.1984).

Those errors which result from "some other source" include those which "could have resulted from the informant's perjury or reckless disregard for the truth, or from the negligence or good faith mistake of either the officer [affiant] or the informant." *Dailey*, 639 P.2d at 1075. Unmistakably, our holdings in *Dailey* and *Winden* contemplate that the source of the error is one which occurs before or during the issuance of a warrant. It is difficult to see how the prosecution's actions, or inactions, occurring after the issuance of a search warrant, could be considered the source of error in an affidavit, unless the warrant has somehow been physically altered since its issuance.

This does not mean that the trial court erred in this instance, because the People have mischaracterized the trial court's ruling. Properly viewed, the trial court did not strike the false information in the affidavit because the prosecution was considered the "source" of the error, but for the simple reason that the prosecution failed to disclose that it knew of this falsehood until after the trial had concluded.

■ It is a basic principle of discovery in criminal proceedings in Colorado that "the prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor." Crim.P. 16 Part I (a)(3). This codification of the prosecutorial duty to disclose exculpatory information is grounded in the constitutional requirement of due process as identified in *Brady v. Maryland*, 373 U.S. 83, 83

---

3. Since we find that the trial court did not abuse its discretion in striking the erroneous information from the affidavit supporting the warrant on the basis of the prosecution's failure to disclose, we express no opinion whether the conduct of the officers here would warrant the removal of the information pursuant to a *Dailey* veracity challenge.

S.Ct. 1194, 10 L.Ed.2d 215 (1963) (due process clause of fifth amendment) and made applicable to the states through the fourteenth amendment in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See also People v. Thatcher*, 638 P.2d 760 (Colo.1981); *People v. Smith*, 185 Colo. 369, 524 P.2d 607 (1974). Where the prosecution has failed to meet this duty, the trial court has traditionally been given broad discretion in fashioning remedies. *See, e.g., People v. Shannon*, 683 P.2d 792 (Colo.1984) (prosecution's rebuttal witnesses not allowed to testify); *People v. District Court*, 664 P.2d 247 (Colo.1983) (fingerprint evidence disallowed); *People v. Bloom*, 195 Colo. 246, 577 P.2d 288 (1978) (prosecution's inquiry into investigative reports foreclosed until made available to defense). *See also* Crim.P. 16 Part III(g) (trial court may enter such order as it deems just under the circumstances).

■ Here, the record establishes that the nondisclosure was material to the defense. The trial court ruled at both the first trial and the second motion to suppress that if it excised the information that Lister had seen Benz actually enter the defendant's residence, then the warrant would fail for lack of probable cause. Further, the prosecution admitted during hearings on post-trial motions and was found to have known that Lister's statements were false as early as the very first suppression hearing. Yet, the prosecution stood mute, even when the trial court expressly noted at the end of trial that it was basing its refusal to suppress on the assumption that the prosecution had no knowledge of the falsity. None of these findings have been challenged by the People. We believe that it is better that the prosecution should have lost the original motion to suppress with integrity intact than to have won by deception. Accordingly, we conclude that, under

these circumstances, there was no abuse of discretion.[4]

The ruling of the trial court is affirmed.

---

**4.** Although we do not approve of the trial court's invocation of a discovery sanction in response to a motion to suppress, this defect does not require reversal. We note that the trial court could have made this ruling in response to the defendant's motion to dismiss which, like the motion to suppress before the second trial, was also addressed in the trial court's written orders.