The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Helen Mary FLORES, a/k/a Helen
Bambi Flores, and Robert B.
Flores, Defendants–Appellees.

No. 88SA82.

Supreme Court of Colorado,
En Banc.

Dec. 19, 1988.

Norman E. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., L. Douglas Jewell, Deputy Dist. Atty., Denver, for plaintiff-appellant.

Lozow, Lozow and Elliott, Charles W. Elliott, Denver, for defendant-appellee Helen Mary Flores.

Lozow, Lozow and Hughes, Brad Lozow, Denver, for defendant-appellee Robert B. Flores.

VOLLACK, Justice.

The People bring this interlocutory appeal[1] from the Denver District Court's order suppressing the evidence which was seized during two searches of the defendants' residences pursuant to search warrants. The suppression motion was granted after the prosecution refused to identify and produce, for an *in camera* interview, the confidential informant who gave the officer-affiant information contained in the affidavits supporting the search warrants. We reverse the suppression order and remand the case for further proceedings consistent with this opinion.

I.

Helen and Robert Flores,[2] the defendants below and the appellees in this proceeding, were charged in two informations filed against each of them in Denver District Court with multiple counts of unlawful distribution, manufacturing, dispensing, sale and possession of numerous Schedule II and Schedule IV controlled substances. The cases arose from two separate searches of the defendants' homes, performed pursuant to two separate search warrants. The first search was conducted on June 16, 1986, and the second search was on August 18, 1986.

In June of 1986, a Denver Police Department Detective prepared a search warrant and supporting affidavit requesting authorization for a search of the residence where Helen and Robert Flores lived together, located at 39 Lowell Boulevard in Denver. The warrant was authorized, and on June 16 a search of the Lowell Boulevard residence was conducted (the June search). Evidence was seized from the defendants' home and the defendants were arrested. This search gave rise to the charges filed in the second information.[3]

The defendants were released on bond and moved into a new residence, at 455 Newton Street. In August 1986 the detec-

---

1. The People's appeal is properly before us pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1986).

2. The defendants are a mother and son.

3. The second information actually arose from the first search, which was conducted in June, while the first information filed by the prosecution arose from the second search, which was conducted in August. The charges in the first information were one count of possession of a Schedule I controlled substance (heroin), one count of possession of a Schedule II controlled substance (cocaine), and one count of possession of a Schedule I controlled substance (psyilocyn). Psilocyn is a hallucinogenic controlled substance listed at section 12–22–309(2)(a)(XVI), 5 C.R.S. (1985 & 1988 Supp.). Each count was against both defendants.

tive prepared another search warrant and supporting affidavit, which was again approved by a judge. The warrant was executed on August 18, 1986, at the defendants' Newton Street address (the August search). Evidence was seized and the defendants were arrested. The second search gave rise to the charges filed in the first information.[4]

After the charges were filed, the defendants filed numerous motions in both cases attacking the search warrants and the supporting affidavits.[5] These challenges were essentially directed to the veracity of the information found in the affidavits supporting the two search warrants.[6] This information had been provided to law enforcement authorities by a confidential informant. The defendants' specific argument was that the information in the affidavit which they challenged as being untrue or inaccurate was material to the determination of probable cause by both judges and

**4.** The charges in the second information were one count of possession of a Schedule II controlled substance (cocaine), the first count against both defendants and the second against Robert Flores only, and the third count was the same charge involving a Schedule IV controlled substance (valium).

**5.** Helen Flores filed, among other motions, a motion to suppress evidence, a motion for disclosure of the confidential informant, a motion and supplementary motion for a veracity hearing (filed with affidavits), and a motion to join all motions filed by Robert Flores. Robert Flores filed a motion to adopt all motions filed by Helen Flores, a motion to suppress evidence, a motion for disclosure of the confidential informant, and a motion for a veracity hearing. Robert's attorney did not submit the necessary affidavits in support of the veracity hearing motion, and the affidavits which he tendered at the hearing were rejected as untimely filed. However, as the court noted, the affidavits filed with Helen Flores' motion would be incorporated by virtue of Robert's motion to join all of Helen's motions. Further, even though the affidavits involved two separate defendants, the language of Helen's affidavits was identical to the language of the affidavits tendered by Robert. The judge and the attorneys agreed to consider the veracity hearing motion, the disclosure of informant motion, and the motion to suppress at the same time because the suppression motion depended on the ruling on the other two motions. Finally, the motion to disclose the confidential informant's identity was for purposes of the veracity hearing only and was not a ruling on whether the informant need be revealed for purposes of a trial on the merits of the case.

**6.** The portion of the affidavit being challenged actually constituted almost half of the body of the search warrant. Defense counsel stated in a memorandum brief:

The Defendant challenges the veracity of the information reportedly tendered by the confidential informant to Detective Cribari, specifically, as it relates to the following language:

Upon contacting your affiant on 6–16–86, the informant related to your affiant that the informant has been inside of the residence known as 39 Lowell Blvd., Denver, Colorado within the seventy-two hour period prior to the informant contacting your affiant, and spanning the dates 6–14–86 to 6–16–86, and had observed a person known to the informant as Helen Tafoya [a/k/a Helen Flores] in possession of, and selling both heroin, and cocaine. In fact, the informant observed two persons that the informant did not know come into the residence via the front door. These parties then spoke with Tafoya for a short period of time. Tafoya then went to another room in the house and returned a short time later. The informant then observed Tafoya hand one of the parties a small folded paper packet that Tafoya stated contained cocaine. One of these parties then handed Tafoya an undetermined amount of U.S. currency in exchange for the alledged [sic] cocaine. The packaging of this suspected cocaine is consistant [sic] with your affiant's past knowledge, and experience relating to the packaging of cocaine at the street level. Also, this informant is familiar with the appearance, and packaging of cocaine for sale at the street level because the informant has admittedly used cocaine in the past.

Also in this same time span, the informant observed an unknown male come to the residence and meet with Tafoya. The informant observed Tafoya sell this unknown male person what was presented as a small rolled balloon containing heroin.

The second part of the test set forth in *People v. Dailey*, 639 P.2d 1068 (Colo.1982), requires that the defendant set forth with specificity the precise statements in the affidavit which are being challenged. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Because our resolution of the case does not so require, we do not decide whether this would constitute sufficient specification of the precise statements challenged.

that, without that information, probable cause would not have existed to support issuance of the warrants. The suppression motions were filed with supporting affidavits executed by relatives and a friend. Based on the argument that there was not probable cause for issuance of the search warrant, the defendants moved for suppression of all the evidence as unlawfully obtained.

A motions hearing was held in Denver District Court in February 1988. The trial judge prefaced his ruling in this way:

[W]e have a number of principles involved, but two of them are of prime concern. The first of these is that contrary to the federal rule, which requires a substantial showing before a veracity challenge is allowed, our state supreme court in *People v. Dailey*[, 639 P.2d 1068 (Colo.1982),] has indicated that it only has to be some good faith basis. What "some" means, of course, is subject to interpretation.

Good faith would indicate something more than frivolous. It has to be a basis in fact, not just a basis in opinion, but a basis in fact.

. . . .

So my first conclusion is that we don't have to have a substantial basis on the part of the defendant. We merely have to have a good faith basis in fact.

My second concern is how does the defendant establish his or her veracity challenge and, indeed, his or her right to a veracity challenge?

. . . .

If in Colorado you are entitled to a veracity challenge upon some showing of a good faith basis in fact to question the accuracy upon which the search warrant is to be issued, then I find it very difficult for the court to understand why, if you have that right, you are not accorded the access to the materials as to which that right could be accomplished, the general privilege of a nondisclosure of informant to the contrary notwithstanding.

The judge then explained that, given the facts of this particular case, he was going to fashion his own remedy.

I'm going to fashion a remedy in this case, and I don't know if it's appropriate or not.

. . . .

I am going to interview the informant *in camera*, in confidence. If I then determine that the informant's testimony would be helpful to the defendants in supplementing their request and making a threshhold [sic] requirement for a veracity challenge, then I am going to disclose the information ... to ... the defendants—and *give them the opportunity to supplement their showing of good faith.*

If I determine that such testimony is not availing to the defendants, then I will have to give you a ruling as to whether this constitutes a good faith basis for veracity challenge independently thereof.

(Emphasis added).

The judge explained that he would conduct this *in camera* interview at a convenient place, and that the only people present at the interview would be himself, the confidential informant and the court reporter. He ruled that the recorded interview would be sealed and not copied into the file, but would be made available for appellate review. During a discussion in chambers, the court said that "in the event that [the informant] is ... unsupportive at all of the defendants' position in this case, then I ... probably will not disclose the identity." On the contrary, if it turned out that the informant "never told" the police what he was alleged to have said, then the defense was "probably" entitled to know the identity of the informant. The hearing was scheduled to continue at 8:30 the next morning, in order to give the prosecution and the investigating detective an opportunity to locate and talk with the confidential informant.

At the continuation of the motions hearing the next morning, the prosecutor and investigating detective told the judge that the informant was not willing to come forward. The judge noted: "[B]ecause of var-

ious reasons best known to the investigating detective and the district attorney, ... they have elected not to identify the informant or have him produced for purposes of interrogation by the court *in camera.*" Because the informant was not produced for this *in camera* interview, the court granted the defendants' motions and suppressed all the evidence arising from both searches. The judge actually ruled on the motion to suppress evidence in conjunction with the motion for disclosure of the informant and the motion for a veracity hearing. He held:

> I conclude thereby that inasmuch as the prosecution is not willing to identify and produce the informant for purposes of the *in camera* interview by the court for possible revelation to the defendant, or defendants I should say, incident to the veracity challenge and incident to the motion to suppress, that as an appropriate and proper sanction for the refusal to obey the order of court and to further protect the rights of the defendants in accordance with *Brady v. Maryland,* [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),] that I am going to grant the motions to suppress filed by both defendants.
>
> Therefore, no items seized incident to the search of the premises or directly arising therefrom will be allowed to be received into evidence in this trial. I am granting the motions to suppress.

The prosecution filed this interlocutory appeal from the judge's suppression order.

## II.

This case requires us to consider the interrelation of a veracity challenge and a request for disclosure of an informant's identity. Our cases have recognized the appropriateness of veracity hearings, which are inquiries into the accuracy of statements found in an affidavit supporting a search warrant, "at least where the good

faith of the police officer-affiant was explicitly or tacitly at issue." *People v. Dailey,* 639 P.2d 1068, 1073 (Colo.1982). Veracity challenges to police officers' affidavits are permitted in Colorado, and *Dailey* is the controlling case in this area. *People v. Cook,* 722 P.2d 432, 435 (Colo.App.1986). In *Dailey,* we reviewed a trial court's decision to permit the defendant to challenge "the accuracy of the statements in the affidavit for the purpose of destroying the factual foundation for a determination of probable cause." 639 P.2d at 1073. We discussed the United States Supreme Court's standard in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), describing the circumstances under which a veracity hearing must be held when a defendant has challenged the accuracy of an affidavit supporting a search warrant. *Dailey,* 639 P.2d at 1074–75.

As is the case here, *Dailey* involved a challenge to the accuracy of statements in an affidavit supporting a search warrant. In *Dailey,* we set forth this two-part test:

> [A]s conditions to a veracity hearing testing the truth of averments contained in a warrant affidavit, under our state law *we shall require that a motion to suppress* (1) *be supported by one or more affidavits reflecting a good faith basis for the challenge* and (2) *contain a specification of the precise statements challenged.*

*Id.* at 1075 (emphasis added). If both parts of this threshold test are met, then "a veracity hearing must be held in order to comply with the Fourth Amendment of the federal constitution." *People v. Winden,* 689 P.2d 578, 581 (Colo.1984) (citing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Other than our adoption of the lesser standard of a "good faith basis" [7] in the first part of the test, we held that "there is nothing in our prior opinions at variance with the stan-

---

**7.** "Federal law permits a veracity challenge upon 'a substantial preliminary showing'" that a false statement was included in the affidavit either knowingly and intentionally, or with reckless disregard for the truth. *People v. Cook,* 722 P.2d 432, 435 (Colo.App.1986). Colorado

has instead adopted the "less demanding" standard that the defendant is entitled to a veracity hearing "upon a showing of some good faith basis in fact to question the accuracy of an affidavit." *Id.*

dards and procedures set forth in *Franks v. Delaware.*" *Dailey,* 639 P.2d at 1074.

The *American Law Institute Model Code of Pre–Arraignment Procedure* suggests that the issue of disclosing an informant's identity is "a facet of the more general [problem]" of what evidentiary showing is required to support a motion to suppress when the suppression motion is based on lack of probable cause for the search warrant. *Model Code of Pre–Arraignment Procedure* §§ 290.3, 290.4 commentary at 567, 572 (1975). The general principle controlling the disclosure of confidential informants is that the government has a qualified privilege to choose not to disclose the identity of a confidential informant. *People v. Vigil,* 729 P.2d 360, 364 (Colo.1986). Although a criminal defendant does not have a constitutional right to learn an informant's identity, "considerations of fundamental fairness sometimes require that the identity of such an informant be revealed." *Id.* Whether the privilege applies in a particular case depends on the trial court's balancing of the public interest in protecting confidential informants who are providing information to law enforcement authorities against the defendant's asserted need for the evidence. *Id.*

In ordering the *in camera* interview in this case, the judge appeared to have been relying on the procedure described in footnote 11 in *Dailey,* 639 P.2d at 1077. In that footnote, we noted that in addition to ordering or denying disclosure of a confidential informant,

> a valuable third alternative exists in informant privilege cases. In addition to either ordering or denying disclosure of the informant's identity, the court has the alternative of conducting an *in camera* hearing at which the prosecution is required to present the informant for judicial interrogation. If such a hearing is ordered, the defendant should have an opportunity to submit questions he desires the judge to ask at that proceeding. A summary report of such proceedings should be made available to the defendant, and a transcript of the proceeding should be sealed and preserved for use in

case of appellate review.... [I]n proper cases, such a hearing can avoid an otherwise irreconcilable conflict between the legitimate need for informant anonymity and the right of the defendant to be free of unfounded infringements of his privacy and liberty. Courts and commentators have expressed general approval of the *in camera* hearing device in this context, and we believe that its use should be fostered.

639 P.2d at 1077 n. 11 (citations omitted). The record shows that the judge said he would follow these procedures in conducting the *in camera* examination of the confidential informant.

In summary, the defendant bears the initial burden of (1) proving that there is a good faith basis in fact for the challenge, and (2) describing with specificity the precise statements being challenged. Only if a defendant meets the two threshold requirements described in *Dailey* does the fourth amendment require that a veracity hearing be conducted. If a veracity hearing is held, the court must first determine whether there are erroneous statements in the affidavit. If erroneous statements are contained in the affidavit, the court must decide whether " 'the source of the error is intentional falsehood or reckless disregard for the truth on the part of the officer-affiant.' " *Winden,* 689 P.2d at 582 (quoting *Dailey,* 639 P.2d at 1075). If the court finds that the defendant has shown by a preponderance of the evidence that the source of the error is intentional falsehood or reckless disregard for the truth, then the false statements must be stricken from the affidavit. *Dailey,* 639 P.2d at 1076.

If the error resulted from "some other source," not the officer-affiant, then "the question of appropriate sanctions, if any, would be left to the discretion of the trial court." *People v. Millitello,* 705 P.2d 514, 518 (Colo.1985) (citing *Dailey,* 639 P.2d at 1075, and *Winden,* 689 P.2d at 582). We concluded in *Dailey* that errors arising from "some other source" included errors resulting from an informant's perjury or reckless disregard for the truth, as well as

from the negligence or good faith mistake of an informant or an officer-affiant.[8] *Dailey,* 639 P.2d at 1075; *Millitello,* 705 P.2d at 518.

We note that this determination—whether the affidavit contains false statements, and whether the falsity was intentional or negligent—does not arise until the two threshold *Dailey* requirements have been met. It is not until this stage of the proceedings that the determination is made as to whether false statements must be stricken, and whether the affidavit still establishes the existence of probable cause.

> No hearing need be held unless "the allegedly false statement is necessary to the finding of probable cause," and suppression is to occur only if the defendant proves perjury or reckless disregard and it then appears that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause."

2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.4(c), at 197 (1987) (hereinafter LaFave); *see id.* § 4.4(b), at 188 (footnote omitted) ("Once it is concluded, as held by the Supreme Court in *Franks v. Delaware,* that a challenge to the accuracy of a search warrant affidavit is not absolutely foreclosed, it then becomes extremely important to determine precisely what kind and quality

of inaccuracies will put the warrant in jeopardy.").

■ In order to have statements stricken from an affidavit, then, the challenging defendant must (1) establish a good faith basis in fact for the challenge, based on affidavits submitted in support of the motion to suppress, (2) set forth with specificity the "precise statements challenged," (3) establish at the veracity hearing that there are false statements in the affidavit, and (4) establish that the false statements were the product of "intentional falsehood or reckless disregard for the truth" by "the officer-affiant" or by "some other source," such as a confidential informant. *Winden,* 689 P.2d at 582.

### III.

The first issue is whether the trial court correctly concluded that the defendants met the first *Dailey* threshold requirement of establishing a good faith or reasonable basis in fact to believe that information contained in the affidavit supporting the search warrant is false. Based on the supporting affidavits found in the record, we conclude that the defendants did not meet this burden.

■ If disclosure of an informant's identity is necessary in order for a court to rule fairly on a suppression motion, the trial

---

8. In *Franks v. Delaware,* "the statement challenged by the defendant was that *named* persons had made certain declarations to the affiant-officer," therefore the integrity of the affiant-officer was being challenged, not the integrity of the confidential informant. 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.4(d), at 205 (1987) (emphasis in original). Because the ruling in *Franks* specifically addressed "only the question of the integrity of the affiant's representations as to his own activities," the Court declined to "decide, and ... predetermine, the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made." *Franks,* 438 U.S. at 170, 98 S.Ct. at 2683. The Court did note that it previously held in *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), that the federal due process clause does "not require the State to expose an informant's identity routinely, upon a defendant's mere demand, when there was ample evidence in the probable-cause hearing to show

that the informant was reliable and his information credible." 438 U.S. at 170, 98 S.Ct. at 2683.

In *Dailey,* the trial court held that the "erroneous averments [in the affidavit] raised questions as to the *credibility of both the informant and the affiant.*" 639 P.2d at 1075 (emphasis added). There, we did not distinguish between challenges to the officer-affiant's veracity, and challenges to the veracity of a confidential informant. We addressed this "difficult question," however, in *People v. Nunez,* where we rejected the prosecution's contention that only the veracity of the officer-affiant can be attacked in a veracity hearing. 658 P.2d 879, 881 (Colo.), *cert. granted,* 464 U.S. 812, 104 S.Ct. 65, 78 L.Ed.2d 80, *cert. dismissed,* 465 U.S. 324, 104 S.Ct. 1257, 79 L.Ed.2d 338 (1983). *"Dailey* recognized that errors in an affidavit for a search warrant can result 'from the informant's perjury or reckless disregard for the truth, or from the negligence or good faith mistake of either the officer or the informant.'" *Id.* (quoting *Dailey,* 639 P.2d at 1075).

court may, in its discretion, order disclosure. *People v. Garcia*, 752 P.2d 570, 578 (Colo.1988). The defendant bears the burden of making an initial showing that an informant's information will be essential to the merits of the suppression ruling. To make this showing, "the defendant must establish a reasonable basis in fact to believe one of two things: *either* that the informant does not exist, *or* that the informant did not give the police the information on which they purportedly relied as probable cause for the arrest or search." [9] *Id.* at 578–79 (emphasis added); *People v. Bueno*, 646 P.2d 931, 935 (Colo.1982). We must decide, then, whether the defendants here met the burden of establishing a reasonable or good faith basis in fact to believe that (1) the informant did not exist, or (2) the informant did not give the officer-affiant the information on which he purportedly relied as probable cause.

Since our holding in *Dailey*, we have rarely had occasion to review the propriety of a trial court's decision to order a confidential informant to appear at an *in camera* hearing. In *People v. Martinez*, 658 P.2d 260, 262 (Colo.1983), we observed that "the threshold showing required by *People v. Dailey*, 639 P.2d 1068 (Colo.1982), was woefully inadequate." There, the good faith basis in fact consisted of two things: "a conclusory affidavit" filed with the defendant's motion for disclosure, and the defendant's testimony "that no person had been inside of her home from January 9, 1982 to January 11, 1982 when the informant claimed to have been in her home." *Martinez*, 658 P.2d at 261. We stated that "[t]he motions and the affidavit which were filed to support disclosure of the identity of the informant were conclusory and did not, in our view, comply with the prerequisites required by the *Dailey* case." *Id.* 658 P.2d at 262. Because the prosecution did not

object, however, we upheld the trial court's ruling as discretionary.

Two justices dissented in *Martinez*, arguing that there was "absolutely no showing" by the defendant of a good faith basis to question the accuracy of the affidavit, and that the suppression motion also did not meet the second *Dailey* requirement of specifying which statements in the affidavit were being challenged. *Id.* 658 P.2d at 263 (Rovira, J. and Hodges, C.J., dissenting).

In contrast, the court of appeals has held that the following affidavit did establish a good faith basis in fact to challenge the police officer's affidavit:

> Attached to the defendant's motion was an affidavit of an investigator who averred that in an interview, Sandidge [the co-defendant] had stated "he had no knowledge of Mr. Cook's [the defendant's] involvement with cocaine," and that at no time was Sandidge introduced to Cook as the source of the cocaine.

*Cook*, 722 P.2d at 435. In contrast, the Illinois Supreme Court has held that the defendant's submission of three affidavits asserting an alibi met the "substantial preliminary showing" requirement adopted in that state; "all the defendant's affidavits are sufficiently detailed so as to subject the affiants to the penalties of perjury if they are untrue." *People v. Lucente*, 116 Ill.2d 133, 154, 107 Ill.Dec. 214, 222–23, 506 N.E. 2d 1269, 1277–78 (1987). The Illinois court noted that "the preliminary burden [of making a substantial preliminary showing] must be sufficiently rigorous to preclude automatic hearings in every case, but not so onerous as to be unachievable." *Id.* at 152, 107 Ill.Dec. at 222, 506 N.E.2d at 1277.

Helen Flores' Motion for Disclosure of Informant stated "[t]hat the disclosure of [the informant] is necessary for the preparation of both the defense to the charges

---

**9.** This factual setting, in which the issue of disclosure arises in connection with a motion to suppress evidence, must be distinguished from the second type of situation, in which the informant's identity arises in connection with the claim that the informant is an essential witness on the question of guilt or innocence. *People v. Bueno*, 646 P.2d 931, 935–36 (Colo.1982). "[A]t

a suppression hearing, where a defendant attacks the veracity of a police officer-affiant he is attacking the credibility determination that has been made previously [by the magistrate who issued the search warrant]; albeit that such determination was an *ex parte* one." *Pennsylvania v. Bonasorte*, 337 Pa.Super. 332, 486 A.2d 1361, 1373 (1984).

and to determine the basis for veracity of [sic] lack thereof of the affiants *in the case herein.*[10] *(Emphasis added). Robert Flores' Motion for Disclosure of Informant contained identical language.*

We first look to the affidavits filed by the defendants in support of the suppression motions. In the August case, the affidavit executed by defendant Helen Flores' daughter stated that the daughter had spent "a considerable period of time" with her mother "during the period of August 16, 1986 to August 18, 1986" and that she knew of her "own personal knowledge that Helen Jenkins [Flores] did not sell any narcotics on those dates." An affidavit by Helen Flores' son—her co-defendant in these cases—contained identical assertions. A third affidavit, executed by an individual named Alvarez whose relationship to the defendant was not explained, contained language identical to that found in the first two affidavits. The fourth affidavit contained the defendant's own assertions that she had been in the process of moving and did not sell narcotics on the days in question.

In her affidavit filed in the June case, Helen Flores stated:

> [D]uring the above time period [of June 13 to June 16], I was with my children and grandchild at the Flea Market, at Barnham Park for a picnic with friends and swimming with the children, and babysitting for children of a friend. During most of this period I was out of the house at 39 Lowell Boulevard and was, during this period, spending that time, almost entirely, with friends and family.

The affidavits filed by her son, her daughter, and Alvarez were identical to the affidavits filed in the August case.[11]

"To mandate an evidentiary hearing, the challenger's attack must be *more than conclusory* and must be supported by more than a mere desire to cross-examine." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684 (emphasis added). "If the defendant 'has fairly put in issue' the existence of the informant, whether the officer's report of the informer's prior reliability is truthful, or whether the officer's recitation of what the informant told him is correct, then an in camera hearing should be held." 1 LaFave § 3.3(g), at 711 (footnote omitted).

Here, there was never any specific showing or offer of proof regarding the truth or falsity of the information presented in the affidavit to the search warrant. The information presented to the trial court consisted of conclusory assertions or statements by the accused, and friends and family of the accused, asserting that during part of the time in question, they had not observed Helen Flores selling controlled substances. After reviewing the affidavits at the motions hearing, the trial judge raised the question of "whether mere denial, general denial, on the part of a defendant in affidavit form" satisfies the first *Dailey* requirement. As the judge himself noted:

> If that is so, then I have to have a veracity challenge on every case that comes before the court. Because the minute the defendant says in effect before the court "not guilty," and then she or he reduces that to an affidavit saying, "not guilty; I didn't do the things alleged," then I would have to have a veracity challenge.

When the court ruled that the informant must be disclosed, there had been no findings indicating whose veracity was being challenged. There were no findings to show how the defendants had established a reasonable or good faith basis in fact to believe that the informant did not exist, or

---

10. The language of the defendants' motion set forth above seems to indicate that the defendants were challenging the veracity of the officer-affiant, rather than the veracity of the confidential informant. The affidavits, however, go to the veracity of the informant, not the officer-affiant. Because of our holding in *People v. Nunez, see supra* note 8, and because there was not a good faith basis here to challenge the veracity of either the informant or the officer-affiant, this ambiguity does not affect our decision.

11. Robert Flores filed a virtually identical suppression motion and affidavits, and the trial court's rulings applied to both defendants' motions. *See supra* note 5.

that the officer-affiant was lying about the information given to him by the informant. No findings were made as to the source of the alleged erroneous statements, and as to whether the error was intentional or merely negligent or a good faith mistake. A finding as to the source of the error must be made in order to determine what the appropriate sanction will be. The trial court therefore ruled prematurely in requiring production of the confidential informant and thereafter suppressing all of the evidence in this case based on the *Dailey* affidavits submitted with the motions to suppress. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684.

▮ In *People v. Winden*, the trial court questioned the officer-affiant *in camera* about the circumstances of the informant's prior reliability before determining if there was a good faith basis in fact. 689 P.2d at 580. At the suppression hearing in *People v. Dailey*, the defendant produced a lease-rental agreement which corroborated her statement that she had already moved from the address where the informant claimed to have observed her. 639 P.2d at 1071. We cannot specify, of course, the exact level of proof that will constitute a good faith basis in fact; that determination will depend on the particular facts of each case. *See People v. Lucente*, 116 Ill.2d at 151, 107 Ill.Dec. at 221, 506 N.E.2d at 1276 (In adopting the "substantial preliminary showing" requirement, the Illinois Supreme Court stated: "[I]f one visualizes a continuum of potential showings, with mere requests for hearings at one extreme and proof beyond a reasonable doubt at the other, it is clear that *Franks* [*v. Delaware* ] demands something more than a request, and even more than a defendant's unsubstantiated denial. If 'substantial' meant no more than that, *Franks* hearings would be held in every case."). We can say, however, that mere assertions of denial such as these are not enough. The record here does not provide a reasonable basis in fact to believe that either the informant did not exist, or that the informant did not give the

officer-affiant the information on which he relied to establish probable cause. *Garcia*, 752 P.2d at 578–79; *see Pennsylvania v. Bonasorte*, 337 Pa.Super. 332, 486 A.2d 1361, 1374 (1984) ("Of course, if the only 'evidence' produced at the suppression hearing is a defendant's bald assertion (e.g., that the informant does not exist or that the affiant misrepresented information conveyed by informant), then the defendant has failed to meet his threshold burden.").

Based on the evidence in the record, we conclude that the defendant did not make the required showing of a good faith basis for challenging the affidavit.

"If a defendant may insist upon disclosure of the informant in order to test the truth of the officer's statement that there is an informant or as to what the informant related or as to the informant's reliability, we can be sure that every defendant will demand disclosure. He has nothing to lose and the prize may be the suppression of damaging evidence if the State cannot afford to reveal its source, as is so often the case."

*McCray v. Illinois*, 386 U.S. 300, 306, 87 S.Ct. 1056, 1060, 18 L.Ed.2d 62 (1967) (quoting *State v. Burnett*, 42 N.J. 377, 201 A.2d 39 (1964)); *see* 1 LaFave § 3.3(g), at 700–01.

Even if the defendants convincingly assert that there are false statements in the affidavit, "it is *imperative* that the trial court make specific findings *why the false statements are in the affidavit* submitted to obtain a search warrant." *Winden*, 689 P.2d at 582 (emphasis added). These findings are required in order to determine the appropriate sanctions.

The court erred by ordering an *in camera* interview before the defendants met the necessary threshold determinations of *Dailey*. We cannot conclude, based on the record before the trial court and the record on appeal, that the challenge to the search warrant affidavit was "more than conclusory," nor can we conclude that the defendant has fairly put into issue either the existence of the informant, the informant's prior reliability, or the veracity of the officer-affiant. *Franks*, 438 U.S. at 171, 98

S.Ct. at 2684. To hold otherwise would render meaningless any privilege against disclosure of confidential informants. Without having made findings as to these threshold requirements, the trial court was premature in mandating an *in camera* interview for questioning of the informant, and suppressing all of the evidence based on the affidavits filed with the suppression motions.

We reverse the suppression order and remand the case for further proceedings consistent with this opinion.

LOHR, J., dissents. QUINN, C.J., joins in this dissent.

LOHR, Justice, dissenting:

I respectfully dissent from the majority's decision to reverse the district court's suppression order. Although I do not fully agree with the district court's reasoning, I conclude that it arrived at the correct result.

The defendants moved to suppress evidence gathered in searches of their homes conducted on June 16, 1986, and August 18, 1986, pursuant to search warrants. These motions were based in part on the contention that the warrants were not supported by probable cause because statements made in the affidavits for search warrants and attributed to an unnamed informant were untrue. In order to test the accuracy of the statements, the defendants moved for a veracity hearing. They supported the veracity hearing motions with their own affidavits and the affidavits of two other persons asserting on personal knowledge that the statements contained in the affidavits for search warrants and attributed to the confidential informant were untrue. The statements in question were necessary support for the determinations of probable cause upon which the warrants were based. In addition, the defendants moved for disclosure of the identity of the confidential informant, alleging that such disclosure was "necessary for the preparation of both the defense to the charges and to determine the basis for veracity or lack thereof of the affidavits." The district court held a motions hearing and ordered as a threshold

matter that the informant be produced for an *in camera* hearing. The trial judge adopted this procedure in order to assist in determining whether the defendants had established a good faith basis for holding a veracity hearing and whether disclosure should be ordered to permit the defendants to obtain information necessary for the suppression hearing.

I conclude that the affidavits attached to the motions for a veracity hearing were sufficient in themselves to establish a good faith basis for challenging the averments contained in the affidavits for search warrant. I also would hold that the trial judge acted within his discretion in ordering that the informant appear at an *in camera* hearing to permit the court to evaluate the necessity for disclosure of the informant's identity to assist the defendants in preparing for the suppression hearing. When the prosecution declined to produce the informant for that purpose, the trial court also acted within its discretion in granting the motions to suppress the evidence discovered in the searches conducted under the authority of the warrants. Accordingly, I would affirm the suppression order and remand the case for further proceedings.

## I.

In *People v. Dailey*, 639 P.2d 1068 (Colo. 1982), we held that a veracity hearing to test the truth of averments contained in an affidavit for search warrant is not to be conducted absent establishment of two preliminary conditions. A motion to suppress evidence based upon such a veracity challenge (1) must be supported by one or more affidavits reflecting a good faith basis for the challenge and (2) must contain a specification of the precise statements challenged. *Dailey*, 639 P.2d at 1075. At issue in this case is whether the first requirement has been satisfied. I conclude that the necessary good faith basis has been adequately demonstrated and that the defendants were entitled to a veracity hearing.

The majority bases its assertion that the defendants failed to meet the threshold requirements of *Dailey* on its conclusion that

the defendants' challenge to the affidavit for search warrant was "conclusory." Maj. op. at 123. The requirement that a challenge to the veracity of statements contained in an affidavit for search warrant be "more than conclusory" stems from *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), in which the United States Supreme Court stated that "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." We based our decision in *Dailey*, however, on state law and stated that *Franks v. Delaware*

> prescribes the circumstances under which a veracity hearing must be held in order to comply with the Fourth Amendment. It does not prohibit such hearings based on lesser threshold showings, nor of course, does it treat the question whether our state constitution requires such a hearing upon some lesser showing of probable merit. *See* Colo. Const. art II, § 7.

*Dailey*, 639 P.2d at 1074. With this preface, we then set forth the conditions of good faith basis and specification of the statements challenged that must be met before a veracity hearing will be held.

In my view, the majority imposes an unduly restrictive standard for the preliminary showing necessary for a veracity hearing based on the requirements set forth in *Dailey*. The majority holds in essence that an affidavit by a defendant stating facts based on the defendant's personal knowledge that are contrary to facts set forth in an affidavit for search warrant is "conclusory" and does not establish a good faith basis for a veracity challenge to the affidavit for search warrant. This is contrary to reason and to our decision in *People v. Martinez*, 658 P.2d 260 (Colo. 1983).

Under the majority approach, a defendant desiring to challenge the veracity of averments in a warrant must meet a bur-

den that commonly will be nearly impossible to carry. The defendant is often the only person who can refute the information provided by the informant. Only in the fortuitous case where another witness exists or relevant nontestimonial evidence is available will a defendant be able to offer other proof of the falsity of the averments to supplement his own testimony. In the instant case, for example, the informant told the officer-affiant that during the time periods preceding the issuance of the warrants the informant had observed the defendants selling what appeared to be heroin and cocaine. Challenging the veracity of these averments, the defendants executed affidavits stating what they were doing during the relevant time periods and that they neither sold nor possessed narcotics during those periods. Additional affidavits were filed by a relative and a third person who had spent time with the defendants during those periods and had observed no narcotics sales. In my view, the affidavits submitted in this case established a good faith basis for challenging the veracity of the averments. The defendants simply had no other apparent means of challenging the allegations contained in the affidavits for search warrant. *Dailey* should not be read as creating a rule or presumption that a defendant is never to be believed, particularly where, as here, other individuals are willing under the penalty of perjury to corroborate the defendants' own sworn statements.

Nor do I read *People v. Martinez*, 658 P.2d 260 (Colo.1983), as requiring a stronger showing of a good faith basis to question the accuracy of averments in an affidavit for search warrant than that which exists in this case. *See* maj. op. at 121–122. Indeed, I read *Martinez* as supportive of the trial judge's suppression order in the present case. In *Martinez*, the defendant had filed "conclusory" motions and an affidavit that did not comply with the prerequisites established by *Dailey*[1] in sup-

---

1. The specific shortcomings of the defendant's motions and affidavit were not described in the majority opinion. The dissent states that the affidavit in support of the motion to suppress

was executed by the defendant but was unverified and that the motion to suppress did not specify which statements in the police officer's affidavit in support of the search warrant would

port of her motions for disclosure of the identity of an informant and to suppress evidence. However, the prosecution did not object to the foundation laid by defense counsel, and a hearing was held at which the defendant testified that no one was in her home during the period in which the informant had alleged the defendant was selling drugs out of her home. *Martinez,* 658 P.2d at 262. Under these circumstances, the trial court acted within its discretion in considering both the defendant's testimony and her affidavit to conclude that a good faith basis existed for doubting the accuracy of the averments in the affidavit for search warrant. *Id.* In *Martinez,* neither the majority nor the dissent suggests that a defendant's affidavit cannot supply a good faith basis to challenge the veracity of statements in an affidavit for search warrant. Indeed, both the majority and the dissent assume that it can. The issue in *Martinez* was the narrow one of whether in the absence of a sufficient objection by the prosecution, a deficient affidavit by a defendant can be supplemented by the defendant's testimony to satisfy the *Dailey* requirements and justify a veracity hearing.[2]

## II.

Having decided that the defendants in this case satisfied the *Dailey* prerequisites for a veracity hearing, I would hold that the trial court acted within its discretion in ordering an *in camera* hearing at which the informant would be questioned by the court in the absence of parties or counsel in order to determine whether the identity of the informant should be disclosed to the defense for the purpose of preparation for the suppression hearing.

We have previously stated that the trial court may order disclosure if "disclosure of an informant's identity is essential to a fair determination of a suppression motion." *E.g., People v. Bueno,* 646 P.2d 931, 935 (Colo.1982). "Disclosure, however, is not automatic upon request. A defendant seeking disclosure must make an initial showing that the informant will provide information essential to the merits of his suppression ruling." *Bueno,* 646 P.2d at 935–36. In deciding whether to order disclosure, the trial court must apply a balancing test, "weighing the 'public interest in protecting the flow of information against the individual's right to prepare his defense.'" *People v. Garcia,* 752 P.2d 570, 578 (Colo.1988) (quoting *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957)); *People v. Marquez,* 190 Colo. 255, 258, 546 P.2d 482, 484 (1976).

The majority states that a defendant seeking disclosure of a confidential informant must establish "a reasonable or good faith basis in fact to believe that (1) the informant did not exist, or (2) the informant did not give the officer-affiant the information on which he purportedly relied as probable cause." Maj. op. at 121; *see Garcia,* 752 P.2d at 578–79; *Bueno,* 646 P.2d at 936. Because in the majority's view the defendants established neither of these conditions, the majority holds that the trial court "ruled prematurely in requiring production of the confidential informant." Maj. op. at 123. The affidavits supplied by the defendants, however, provide a good faith basis to believe that one or the other of these two facts is true. Only if the informant did not exist or did not provide the information stated in the affidavits for search warrant could the statements in the defendants' affidavits be correct.[3] By ordering an *in camera* hear-

be challenged. *Martinez,* 658 P.2d at 263 (Rovira, J., dissenting).

**2.** The procedure followed in *Martinez* was unusual in that the trial court held an evidentiary hearing to determine whether the two conditions for a veracity hearing had been met. I do not read *Dailey* to suggest such a hearing. Rather, absent unusual circumstances the trial judge should evaluate whether the defendant has met *Dailey* prerequisites for a veracity hearing solely

on the basis of the defendant's motion and affidavits.

**3.** The statements in the defendants' affidavits might also be correct if the informant was simply lying. I do not read *Bueno* and *Garcia* as contemplating that disclosure should be limited to only those situations in which the informant does not exist or did not give the officer the information contained in the affidavit for search warrant. A third situation in which an

ing to help determine the defendants' need for disclosure of the informant's identity in order to prepare for the suppression hearing, the trial court utilized a procedure that protected the informant's identity to the maximum extent while offering the court further information upon which to evaluate the need for disclosure of the informant's identity. *See Dailey,* 639 P.2d at 1077, n. 11; *see also Martinez,* 658 P.2d at 261–62. I would hold this order to be well within the boundaries of the trial court's discretion.

### III.

In summary, I conclude that the defendants in this case provided enough information to necessitate a veracity hearing and to justify the trial court's order that the confidential informant appear for an *in camera* hearing. Specifically, the defendants challenged the portion of the search warrant that contained the informant's allegations, denied those allegations, and offered affidavits upon personal knowledge

supporting those denials. In my view, this was sufficient to require a veracity hearing and to permit the district court in its discretion to order the limited disclosure occasioned by an *in camera* hearing to help determine whether the identity of the informant should be disclosed to assist the defendants in preparing for the suppression hearing, of which the veracity hearing would be a part. Suppression was a remedy within the trial court's discretion for failure to comply with that order. Consequently, the suppression order should be affirmed and the case remanded for further proceedings.

QUINN, C.J., joins in this dissent.

---

existing informant gives an officer false information upon which the officer relies as probable cause may also provide grounds for a showing that disclosure of the informant will provide information essential to the merits of the de-

fendant's suppression ruling. *See Bueno,* 646 P.2d at 936 (giving examples of when a defendant will meet his initial burden of showing that the informant will provide information essential to the merits of his suppression hearing).